UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-62255-CIV-COOKE

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

IBRAHIM ALMAGARBY and
MICROCAP EQUITY GROUP LLC,

        Defendants,
_____/

**DEFENDANTS IBRAHIM ALMAGARBY AND MICROCAP EQUITY GROUP LLC'S CORRECTED MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH SUPPORTING MEMORANDUM OF LAW AND REQUEST FOR ORAL ARGUMENT**

Defendants, Ibrahim Almagarby ("Mr. Almagarby") and Microcap Equity Group LLC ("MEC") (collectively, "Defendants"), by and through their undersigned counsel, hereby respectfully move this Court to dismiss Plaintiff Securities and Exchange Commission's ("Commission," "SEC" or "Plaintiff") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the Complaint fails to state a claim upon which relief may, or should, be granted. The grounds for this Motion are set forth below in the accompanying Memorandum of Law.

**DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**I.**    **INTRODUCTION**

With sparse factual allegations, which present a case of first impression in this Circuit, the SEC is attempting to expand the registration requirements under Section 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act") far beyond the scope for which it was intended. More importantly, the SEC's claims directly contrast long-established guidance set forth in prior SEC

pronouncements, which make a distinction between a "trader," who is not required to be licensed with the SEC, and a "dealer," which is subject to SEC registration. If the SEC's position in the instant action were to be accepted, then every single day trader, hedge fund, or other market participant who purchased and sold securities for a profit would be acting as an unregistered dealer, and subject to sanctions. Such a result would be absurd.

Not surprisingly, the SEC is bringing this action to expand the scope of Section 15(a) against a twenty-seven-year-old, part-time college student, rather than a billion dollar hedge fund that routinely engages in the same conduct. Congress, and not the federal courts, is the proper forum for the SEC to engage in rulemaking. Indeed, due process forbids the SEC from doing so. *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) ("The Commission may not sanction Upton pursuant to a substantial change in its enforcement policy that was not reasonably communicated to the public"). As set forth herein, the SEC's claims against Defendants fail to state a cause of action for a violation of the federal securities laws on which relief may be granted under Fed. R. Civ. P. 12(b)(6).

**II.     THE COMMISSION'S ALLEGATIONS**

The SEC's Complaint alleges the following:

Ibrahim Almagarby is twenty-seven years old and lives in Florida. Complaint, ¶ 7. Mr. Almagarby owns and controls MEC, which he formed in January 2013. *Id.*, ¶ 8. Between January 2013 and July 2016, Defendants purchased more than $1.1 million of aged convertible debt of 39 different public companies, converted the debt into shares of the companies' common stock, and sold approximately 7.4 billion shares of such common stock into the public market through accounts at different brokerage firms. *Id.*, ¶ 11-14. The SEC also alleges that Defendants engaged in such conduct as "part of a regular business." *Id.*, ¶ 16.

Based upon the foregoing, the SEC has advanced two claims. First, the SEC alleges that Mr. Almagarby and MEC have, collectively, operated as an unregistered dealer, in violation of Section 15(a)(1) of the Securities Exchange Act of 1934 (the "Exchange Act"). Second, the SEC has brought a control-person claim solely against Mr. Almargarby, pursuant to Section 20(a) of the Exhange Act, based on MEC's having acted as an unregistered dealer violation of Section 15(a)(1).

### III.  ARGUMENT

By its Complaint, the SEC is essentially trying to cast Mr. Almagarby, a 27-year old college student, and his one person company MEC, in the same mold as a Merrill Lynch, UBS, or the numerous other broker-dealers who buy and sell, or make markets in securities issued by public companies. After engaging in a multi-year investigation into Mr. Almangarby's and MEC's activities and finding no fraudulent conduct, the SEC is now attempting to use this Court to reverse its longstanding public policy against taking enforcement actions against "traders," who simply buy and sell securities for their *own* benefit and self-interest, but who are not in the business of providing services to third-parties.

The SEC's Complaint alleges that the Defendants would purchase aged debt from debt holders of small public companies, convert the debt to equity securities with the consent of the public companies who issued such debt, and then sell such equity securities into the public markets. Because Defendants engaged in such course of conduct for their own account and as part of a "regular business," the SEC contends that the Defendants violated Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") by failing to register with the SEC as a "securities dealer."

As set forth below, the Complaint is not only vague and conclusory, but also fails to meet the requirements of Rule 12(b)(6).

A.  **THE SEC IS AN ORDINARY LITIGANT WHEN IT INVOKES THE PROCESSES OF THE COURTS**

As a preliminary matter, and at the risk of stating the obvious, although the SEC is a governmental agency, once it becomes a litigant and seeks redress from the court, it is subject to the same pleading and discovery standards as any other litigant. *See SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. Jan. 13, 2009). This requirement applies to both procedural matters as well as substantive pleading requirements.

B.  **STANDARD OF REVIEW – MOTIONS TO DISMISS UNDER RULE 12(b)(6)**

In 2007, rules governing a motion to dismiss changed substantially. No longer can a plaintiff avoid dismissal by relying upon the oft-quoted line from the Supreme Court's decision in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which provided that "[a] Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which may entitle him to relief." In 2007, the Supreme Court made it clear that the *Conley* Court's use of this "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007). Besides finding the *Conley* Court's statement as supplussage, the Supreme Court rejected the *Conley* standard because under *Conley*, "[a] wholly conclusory statement of claim would survive a Motion to Dismiss whenever pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 1965.

Instead, the Supreme Court provided that

> a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual

4

> allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . .

*Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1964-65 (addition in original) (internal citations omitted). *See also In re Managed Care Litig.,* 2009 U.S. Dist. LEXIS 25427 at *22 (S.D. Fla. Mar. 26, 2009); *City of Winter Haven v. Cleveland Indians Baseball Co., LP,* No. 809-CV-00190-T-17EAJ, 2009 U.S. Dist. LEXIS 38708 at *2-3 (M.D. Fla. Apr. 22, 2009) (both following *Twombly* and dismissing the matters under 12(b)(6)).

Pursuant to Rule 12(b)(6), a court must dismiss a complaint if the complaint fails to state a cognizable claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the well-pleaded factual allegations in the complaint as true, but will not accept unsupported conclusions, unwarranted inferences, or sweeping conclusions cast in the form of factual allegation. *See Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n.2 (1977); *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F3d 1182, 1188 (11th Cir. 2002). If a complaint does not plead facts that state a claim as a matter of law, it must be dismissed. *See Aldana v. Del Monte Fresh Produce, N.A., Inc*., 416 F.3d 1242, 1253 (11th Cir. 2005) (commending district court "for remembering that some minimal pleading standard does still exist . . ." and finding that "bald assertions" and "unwarranted deductions of facts" are not accepted as true and will not survive a Rule 12(b)(6) motion to dismiss).

As described more fully below, the SEC has failed to meet the standards articulated by Rules 12(b)(6) and, as a result, dismissal of its Complaint in its entirety is appropriate.

**C. MR. ALMAGARBY AND MEC ACTED AS TRADERS, AS OPPOSED TO DEALERS, AND THE COMMISSION HAS NOT ALLEGED OTHERWISE**

**1. The SEC has Long Recognized the Distinction Between "Dealers" and "Traders"**

Section 3(a)(5)(A) of the Exchange Act defines "dealer" as, in pertinent part, "any person engaged in the business of buying and selling securities (not including security-based swaps, other than security-based swaps with or for persons that are not eligible contract participants) for such person's own account through a broker or otherwise." 15 U.S.C. §78c(a)(5)(A). The primary factors in determining whether a person is a "dealer" are whether the person trades for his or her own account and whether he or she does so "as part of a regular business." Robert L.D. Colby, Lanny A. Schwartz, and Zachary J. Zweilhorn, *Broker-Dealer Regulation*, Chapter 2, at §2.3.1.A. (Practicing Law Institute, 2016) (A copy of the relevant portion is attached as Exhibit "A"). Unless an exemption is available, dealers must register with the SEC pursuant to Section 15(a) of the Exchange Act.

Section 3(a)(5)(B) of the Exchange Act contains an exemption for "a person that buys or sells securities (not including security-based swaps, other than security-based swaps with or for persons that are not eligible contract participants) for such person's own account, either individually or in a fiduciary capacity, but not as part of a regular business." 15 U.S.C. §78c(a)(5)(A). The SEC has taken the position that a person must buy and sell securities, or be willing to do so contemporaneously to be considered a "dealer." *See, e.g.*, National Council of Savings and Loans, SEC No-Action Letter, 1986 SEC No-Act. LEXIS 2609 (July 27, 1986) (discussing the distinction between a "dealer" and "trader") (A copy of the referenced No-Action

6

Letter is attached as Exhibit "B").[1]  Commentators have noted that "[t]his approach is necessary to distinguish dealers from investors who buy and sell securities for investment purposes, but sometimes hold the position for only a short period of time.  The distinction between active trader and dealer can be very fine."  Colby, at §2.3.1.B, at 2-58.

"Traders" are persons who are excluded from the definition of a "dealer" by Section 3(a)(5)(B).  The dealer-versus-trader distinction has provided a framework for distinguishing persons that fall within the definition of "dealer," as opposed to "traders" who also buy and sell securities for their own accounts, but do not fall within the definition of a "dealer."  In 2002, for example, the SEC proposed rules regarding bank securities activities under the Exchange Act as part of its implementation of Gramm-Leach-Bliley Act of 1999.  *See* Definition of Terms in and Specific Exemption for Banks, Savings Associations, and Savings Banks Under Section 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934, ("Proposed Dealer Exemption Rule"), Exchange Act Release No. 46745 (Oct. 30, 2002), 67 Fed. Reg. 67,496, 67,498 (Nov. 5, 2002) (a copy of the referenced SEC Release is attached as Exhibit "C").   In the Release, the SEC discussed the dealer-versus-trader distinction at some length, describing the distinction as follows:

---

[1] A SEC No-Action Letter is a letter issued by the SEC Staff providing that it will not prosecute an individual or entity based upon specific facts and circumstances set forth in the individual or entity's request.  Fast Answers:  No Action Letters (Mar. 23, 2017), *available at* https://www.sec.gov/fast-answers/answersnoactionhtm.html;  *see also, Garner v. Wolfinbarger,* 56 F.R.D. 499, 503 (S.D. Ala. 1972) (A SEC No-Action Letter is "a letter from the SEC staff that it would not recommend prosecution in the event" that certain actions were or were not taken by the requestor).

Some federal courts have stated while SEC No-Action Letters are not afforded the same level of deference as rule-making orders, they are nonetheless treated as "persuasive."  *NYCERS v. SEC*, 45 F.3d 7, 13 (2d Cir. 1995).  Indeed, the Eleventh Circuit has looked to SEC No-Action Letters in resolving disputes over terminology and definitons that are germane to the securities industry.  *SMF Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1339  (11th Cir. 2010);  *See also, Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010).

> As developed over the years, the dealer/trader distinction recognizes that dealers normally have a regular clientele, hold themselves out as buying or selling securities at a regular place of business, have a regular turnover of business (or participate in the distribution of new issues), and generally transact a substantial portion of their business with investors (or, in the case of dealers who are market makers, principally trade with other professionals). **In contrast, traders have less regular volume, do not handle others' money or securities, do not make a market, and do not furnish the dealer-type services such as rendering investment advice, extending or arranging credit, or lending securities.**

Proposed Dealer Excemption Rule at *6 (emphasis added).

As the SEC's own guidance makes clear, dealers make money by helping others through securities transactions, such as by handling investor monies or securities, making markets, extending credit to investors, or giving investment advice to investors. *See*, *Guide to Broker-Dealer Registrations,* "Who is a Dealer" ("[I]ndividuals who buy and sell securities for themselves generally are considered traders not dealers"), http://www.sec.gov/divisions/marketreg/bdguide.htm#lI (April 2008).

The SEC has not alleged, nor can it allege, that Mr. Almagarby or MEC engaged an any of the conduct that would make them dealers pursuant to the SEC's pronouncements. The Defendants are not alleged to have handled monies for third-parties, make markets in any security, provided advice or lent monies. Indeed, lest there be any confusion over the distinction between a "dealer" and "trader," and what constitutes "a regular business" for purposes of the definition, the SEC explained it in *Gordan Wesley Sodorff, Jr.* (Admin. File Proc. No. 3-7390), 1992 SEC LEXIS 2190 (Sept. 2, 1990), which was an appeal from a decision by a National Association of Securities Dealer's Disciplinary Panel. In *Sodorff,* the SEC stated that:

> The definition of dealer contains an exclusion for activity that is not part of "a regular business." **The purpose of this phrase is to "exclude from the definition of 'dealer' members of the public who buy and sell securities for their own account as ordinary traders," even though their trading may involve more than isolated transactions**. Unlike an investor or trader,

8

> Sodoroff's profits did not result from appreciation in the value of the securities, but rather from his markup over the price he paid. Sodoroff solicited investors and handled their money and securities, rendered investment advice, and sent subscription agreements to investors for their review and signature, all of which are characteristics of dealer activity.

*Id.* at *18 (emphasis added). In reference to these activities, the SEC stated: "[t]hese factors distinguish the activities of a dealer from those of a private investor or trader." *Id.* n.27.; *see also* Burton Securities, SEC No-Action Letter, 1977 SEC No-Act. LEXIS 2871 at *2 (Dec. 5, 1977) ("[A] person who buys and sells securities for his own account in the capacity of a 'trader' or individual investor is generally not considered to be 'engaged in the business' of buying and selling securities . . . .") Again, the SEC has only alleged that Mr. Almagarby and MEC traded for their *own* account. The SEC has not alleged that the Defendants had clients or provided any services to third-parties.

Similarly, in a number of SEC No-Action Letters concerning the requirement of dealer registration under Section 15(a), the SEC Staff has stated that a person or entity would ***not*** be a "dealer" based on a consideration of the following factors, if it did not:

1) Advertise or otherwise hold itself out publicly as willing to buy or sell securities from its own account on a continuing basis;

2) Purchase or sell securities as principal from or to customers;

3) Carry a dealer inventory in securities;

4) Quote a market in securities;

5) Provide investment advice;

6) Extend or arrange for the extension of credit in connection with securities transactions;

7) Run a book of repurchase and reverse repurchase agreements;

8) Use an interdealer broker for securities transactions;

9) Lend securities to customers;

9

> 10) Issue or originate securities;
>
> 11) Guarantee contract performance or indemnify the parties for any loss or liability from the failure of the transaction to be successfully consummated; and,
>
> 12) Participate a selling group or act as an underwriter.

*See, e.g.*, Acqua Wellington North American Equities Fund, Ltd., SEC No-Action Letter, 2001 SEC No-Act. LEXIS 756 (Oct. 11, 2001); Davenport Management, Inc., SEC No-Action Letter, 1993 No-Act LEXIS 624 (Apr. 13, 1993); Fairfield Trading Corporation, SEC No-Action Letter, 1988 WL 233618 (S.E.C. No-Action Letter) (Jan. 10, 1988); Burton Securities, SEC No-Action Letter, 1977 SEC No-Act. LEXIS 2871 (Dec. 5, 1977). Copies of the referenced SEC No-Action Letters are attached as Exhibits "D" through "G," respectively.

Here, the SEC has neither alleged that Mr. Almagarby nor MEC exhibited any of the factors set forth through this long-standing guidance. Indeed, based upon the allegations of the Complaint, the Court could reasonably (and properly) conclude that the Defendants were simply self-interested market participants whose sole purpose was to buy aged debt, convert such debt into common stock, and then liquidate the stock for the purpose of making a profit for their benefit. That does not trigger any of the factors set forth by the SEC through No-Action Letters or the guidance provided on its public website. Here, the SEC has alleged that Defendants engaged in 58 purchase transactions in 43 months, between January 2013 and July 2016. Complaint, ¶ 16. The SEC has simply stated, in conclusory fashion, that Defendants purchased debt and sold it as "part of a regular business" without explaining how one (1) transaction every three (3) weeks would be a part of a "regular business" for purposes of Section 3(a)(5), which defines "Dealer" and exceptions to the definition. This is significant, as the the phrase "regular business" is a term of art within SEC pronouncments and No-Action Letters. Without reference to the SEC's

interpretation of "regular business" included therein, the Complaint is deficient and fails to state a cause of action.

### 2. At Least One Federal Court Has Analyzed the "Dealer" Definition Utilzing the Factors Set Forth in SEC No-Action Letters

One of the only federal cases dealing with the dealer-trader distinction is *SEC v. Federated Alliance Group*, 1996 U.S. Dist. LEXIS 12499 (W.D.N.Y., Aug. 21, 1996). In *Federated*, the SEC brought a case against the defendants for operating an unregistered government securities dealer. The court recognized that the definitional sections of the 1934 Act dealing with "dealer" have "not been the subject of extensive judicial examination and interpretation." *Id*. at *8. Accordingly, the *Federated* court looked to the factors set forth in SEC No-Action Letters, essentially mirroring the most of those twelve (12) factors identified above. *Id.*

The SEC argued that while the *Federated* defendants did not meet many of the factors, they nonetheless "made money by purchasing government securities and distributing them to individuals across the country. . . ." *Id*. The *Federated* court found this argument unpersuasive, however, and concluded that it would "excessively broad[en]" the definition" of "dealer" beyond that contemplated by the guidance provided in SEC No-Action Letters. According to the *Federated* court, the SEC's position in the case "would embrace every securities trader who makes money throught buying and selling securities." *Id*.

The instant enforcement action would do precisely the same thing the SEC attempted, but failed to do, in *Federated*. It would, literally, cast an individual and his limited liability company, who simply bought debt, legally converted it to common stock, and liquidated them into the market, in the same mold as a Merrill Lynch, UBS, or Morgan Stanley. These firms also buy and sell securities as part of "a regular business," but they do so while giving advice, making markets,

11

extending credit, and meet many of the other factors articulated by the SEC and its Staff in public pronouncements and No-Action Letters.

### D. MR. ALMAGARBY IS NOT LIABLE AS A CONTROL PERSON BECAUSE THE SEC HAS FAILED TO ALLEGE A PRIMARY CAUSE OF ACTION UNDER 15(A)(1)

Under Section 20(a) of the Exchange Act, a controlling person is liable jointly and severally with and to the same extent as the controlled person for the controlled person's acts, unless the controlling person can establish the affirmative defense of good faith and non-inducement. *Laperrier v. Vesta Ins. Group, Inc*., 526 F.3d 715, 721 (11th Cir. 2008). Control person liability is "derivative" in nature, and ultimately stems from a primary violation. It is axiomatic, therefore, that if there is no primary violation, there is no derivate liability. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635-36 (11th Cir. 2010) ("Because a primary violation of the securities law is an essential element of a § 20(a) derivative claim, a plaintiff who pleads a § 20(a) claim can withstand a motion to dismiss only if the primary violation is pleaded with legal sufficiency. As the Second Amended Complaint failed to allege primary liability under § 10(b), there can be no secondary liability under § 20(a)") (citing *Garfield v. NDC Health Corp.*, 466 1255, 1261 (11th Cir. 2006) (claims by plaintiff were "predicated upon the same alleged unlawful conduct relevant to its claims under Section 10b. Accordingly, the success of [plaintiff's] section 20(a) claim turns on the resultion of its claims under Section 10b and Rule 10b-5")).

Here, because the SEC has failed to allege a cause of action for MEC's violation of Section 15(a)(1) for the reasons stated above, Mr. Almagarby cannot be liable as a control person under Section 20(a) of the Exchange Act.

### E. DUE PROCESS SHOULD NOT PERMIT THE SEC TO REVERSE EXISTING GUIDANCE THROUGH AN ENFORCEMENT ACTION

Due process requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); Michael S. Piwowar, Commissioner, U.S. Securities and Exchange Commission, Remarks to the Securities Enforcement Forum (Oct. 14, 2014) ("Remarks by Comm'r Pinowar"), available at https://www.sec.gov/news/speech/2014-spch101414msp ("[D]ue process starts with fundamental notions of fairness.  Persons should be on notice as to what acts, or failures to act, constitute violations of the law and our regulations").

The instant action, based on the facts alleged in the SEC's Complaint, contradicts prior guidance and violates the due process requirement of reasonable notice.  Based on the SEC's and SEC Staff's longstanding guidance, Mr. Almagarby and MEC could not have had any notice, let alone reasonable notice, that the SEC would consider Defendants' alleged activity to require registration as a dealer under Section 15(a).  None of the allegations in the Complaint, taken by themselves, would amount to a violation of the federal securities laws, or lead one in the Defendants' shoes to believe that they were doing anyting that would require registration.  As explained in detail above, none of the guidance set forth by the SEC or its Staff in pronoucements, SEC No-Action Letters, or even a Q&A on its own website would suggest that Mr. Almagarby or MEC were doing anyting but acting as a trader seeking to make a profit.  *See Alaska Prof'l Hunters Ass'n v. FAA*, 177 F.3d 1030, 1035 (D.C. Cir. 1999) ("Those regulated by an administrative agency are entiled to 'know the rules by which the game will be played'") (citations omitted); *Upton v. SEC*, 75 F.3d 92, 98 (2nd Cir. 1996) (holding that the SEC may not saction a person pursuant to a "substantial change in its enforcement policy that was not reasonably communicated to the public").

The instant action violates due process, and is exactly the type of conduct that Commissioner Piwowar strongly critized in his speech about the fundamental importance of due process in SEC enforcement actions.  *See* Remarks by Comm'r Pinowar.

## IV.   **CONCLUSION**

In light of the foregoing arguments concerning the SEC's failure to allege sufficient facts to support its claims against Defendants, Defendants respectfully moves this Court to dismiss the SEC's Complaint.

### **DEFENDANTS' REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(b)(2), Defendants Almagarby and MEC hereby respectfully request oral argument on their Motion to Dismiss.  This case and the Motion to Dismiss raise novel questions of law regarding the definition of a dealer under Section 3(a)(5) of the Exchange Act, exemptions to the definition, the distinction between a "dealer" and "trader," and other issues raised in Defendants' motion.   At least one federal court has recognized the uniqueness of this issue.  *See Federated*, 1996 U.S. Dist. LEXIS 12499 at *8.   Given the importance of these issues to the determination of the case and the complexity of this area of law, Defendants believe that the Court's decision making process would be significantly aided by oral argument, not to exceed one hour, or for a duration to be determined by the Court.

Dated: January 17, 2018

Respectfully submitted,

**SALLAH ASTARITA & COX, LLC**
3010 N. Military Trail, Ste. 210
Boca Raton, FL  33431
561-989-9080 (Tele.)
561-989-9020 (Fax)

___s/Joshua A. Katz_____
James D. Sallah, Esq. (Lead Counsel)
Fla. Bar. No. 0092584
jds@sallahlaw.com
Jeffrey L. Cox, Esq.
Fla. Bar. No. 0173479
jcox@sallahlaw.com
Joshua A. Katz, Esq.
Fla. Bar No. 0848301
jkatz@sallahlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day upon all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Joshua A. Katz
Joshua A. Katz

**SERVICE LIST**
*Securities and Exchange Commission v. Ibrahim Almagarby*,
**Case No. 17-62255-CIV-COOKE (S.D. Fla.)**

**Via CM/ECF**
Amy J. Oliver, Esq.
David J. Wadley, Esq.
351 South West Temple, Ste. 6.100
Salt Lake City, Utah 84101-1950
Email: olivera@sec.gov
Email: wadleyd@sec.gov
*Counsel for Plaintiff Securities and Exchange Commission*