UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-62255-CIV-COOKE

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

v.

IBRAHIM ALMAGARBY and
MICROCAP EQUITY GROUP LLC,

       Defendants.
_____/

# DEFENDANTS IBRAHIM ALMAGARBY AND MICROCAP EQUITY GROUP LLC'S REPLY MEMORANDUM IN SUPPORT OF CORRECTED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Ibrahim Almagarby ("Almagarby") and Microcap Equity Group LLC ("MEC") (collectively "Defendants"), by and through their undersigned counsel, file this Reply Memorandum in Support of Corrected Motion to Dismiss Plaintiff Securities and Exchange Commission's ("Commission") Complaint [D.E. 13].

## INTRODUCTION

In the Corrected Motion to Dismiss Plaintiff's Complaint with Supporting Memorandum of Law (the "Motion"), Mr. Almagarby and MEC highlighted several deficiencies in Plaintiff's Complaint. First, the Commission failed to state a cause of action for violations of Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), even under the liberal pleading requirements afforded by Fed. R. Civ. P. 8(a). Defendants provided a plethora of authority, including case law, no-action letters, and direct references to the Commission's own website in support of their argument. Indeed, the Complaint's deficiencies are actually highlighted by the

Commission's Opposition to Defendants' Motion (the "Opposition"), which contains several paragraphs of new factual allegations that it *now* wants the Court to consider. Although the Commission repeatedly states that the ultimate determination of whether Defendants were acting as unregistered dealers during the relevant time period is dependent upon "facts and circumstances" not yet developed, it should at the very least be required to plead the facts and circumstances that would lead to the "reasonable inference" that Defendants are "liable for the misconduct alleged" as required by the Supreme Court.

Second, the Commission's enforcement action violates the Defendants' due process rights. The Commission's suggestion that the due process argument should be "disregarded" because of a "clear statutory provision with ample caselaw in support thereof" is not only disingenuous, but it also is contradicted by other statements in the Commission's own papers.

**ARGUMENTS IN SUPPORT OF THE MOTION**

**I.     THE COMMISSION HAS NOT MET THE MINIMAL PLEADING REQUIREMENTS UNDER FED. R. CIV. P. 8(a)**

The Commission's position that Defendants did not cite Fed. R. Civ. P. 8(a) as the proper standard for this Court to consider when evaluating the Commission's Complaint against Defendants' Rule 12(b)(6) challenge is belied by the Motion's reliance upon *Bell Atl. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) (Motion, pp. 4-5), which analyzed a Rule 12(b)(6) challenge to a complaint under Rule 8(a). Despite referring to Defendants' *Twombly* argument as "an entirely irrelevant line" (Opposition at 3), courts have repeatedly relied on its holding to reject "formulaic recitations of the elements of a cause of action . . . devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S. Ct. 1939, 1949 (2009) (citing *Twombly*, 127 S. Ct. at 1955). As the Supreme Court has stated in *Iqbal*:

> "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but *it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"*

*Iqbal*, 129 S. Ct. at 1940 (quoting *Twombly*, 550 U.S. at 1955) (emphasis added). As this Court has held in interpreting the requirements under Fed. R. Civ. P. 8(a) in the context of a Rule 12(b)(6) challenge:

> While the factual allegations set forth in a complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. The court does not need to accept as true a legal conclusion couched as a factual allegation.

*Rodriquez v. Bank of Am., N.A.*, 49 F. Supp. 3d 1154, 1156 (S.D. Fla. 2014) (citations omitted).[1]

Here, the Motion makes clear, the "threadbare recitals" against Defendants in the Commission's Complaint, without more, have failed to permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 192 S. Ct. at 1950.

## II. THE COMMISSION HAS IMPROPERLY ATTEMPTED TO REHABILITATE A DEFICIENT COMPLAINT BY INTRODUCING NEW FACTUAL ALLEGATIONS IN ITS OPPOSITION

As an indication of how threadbare the allegations in the Complaint are, the Commission has attempted to insert new, allegations in its Opposition that it never alleged in its Complaint. It is well-established that a court's review of the sufficiency of a complaint is measured by its four

---

[1] The Commission has denigrated the *Twombly* decision as "an enterly irrelevant line of argument," while relying heavily on a district court decision from the Southern District of Alabama. This is shocking, since the *McMillian* court based its recitation of the standards for a motion to dismiss on the Supreme Court's holding in *Twombly*.

corners.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).  Courts should decline to consider allegations raised in opposition to a motion to dismiss but not in the underlying complaint.  *Grant v. Deutsche Bank Nat'l Trust Co.*, 210 U.S. Dist. LEXIS 189152 at *9 (N.D. Ga. May 30, 2014).  Here, as indicated above, the Commission's Opposition has introduced a litany of factual allegations against Defendants that it contends support its position that Defendants are dealers, which would bring them within the scope of Section 15(a), as opposed to traders, which would not.  For example, some allegations that are in the Opposition, but not in the Complaint, are as follows:

- Unlike a trader, Almagarby's and MEG's income was derived in large measure from the discount they received on the purchased securities (i.e., discount from the then prevailing market prices) and not from later appreciation in the price in those securities.  (Opposition, p. 8)

- Due to the pricing structure of many of Almagarby's and MEG's DPA contracts, they were generally assured of realizing a profit on their business dealings irrespective of any subsequent declines in the price of the purchased securities. (Id.)

- Evidence of Almagarby's investing business include the fact that he (i) seemingly sought to purchase only those securities that he, with the assistance of the lawyers who drafted his various Rule 144 attorney opinion letters, deemed likely to qualify for immediate resale into the market pursuant to the Rule 144 safe harbor and (ii) frequently began selling the securities he obtained through the DPAs shortly after depositing them into MEG's brokerage accounts.  (Id.)

- Almagarby and MEG's trading activities do not rely primarily on appreciation, as Traders typically do, but on active negotiation, acquisition, conversation, and sales that go well beyond that of a Trader. (Id.)

Defendants cannot opine as to whether the inclusion of these allegations in an amended complaint would be sufficient, but the Commission's reliance on them in opposing the Motion highlights the deficiencies in the Complaint.

### III. THE COMMISSION'S SUGGESTION THAT IT NEEDS TIME TO "FULLY EXPLORE" THE "RELEVANT FACTS AND CIRCUMSTANCES" OF DEFENDANTS' TRADING IS DISINGENUOUS

Notwithstanding its attempt to add new facts in the Opposition, the Commission has stated that because the "Dealer-Trader distinction is a fact question that turns on all the relevant facts and circumstances of the trading activity," the parties "must be given the opportunity to develop a record that will enable the factfinder to evaluate all facts and circumstances bearing on the economic reality of the transactions, so as to determine whether the Defendants were engaged in the business of buying and selling securities for their own account." (Opposition, at p. 2). As described herein, this would turn *Twombly* and *Iqbal* on their heads. The Supreme Court has made it clear that "the doors of discovery" are not unlocked "for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

Moreover, the Commission has conveniently failed to mention that it has already conducted an extensive, multi-year investigation into the relevant facts and circumstances surrounding Defendants' conduct. The Commission has likely reviewed thousands of pages of documents from brokerage firms, transfer agents, and other individuals and entities concerning the transactions at issue before ever filing the Complaint. Accordingly, the Commission should able to articulate the "relevant facts and circumstances" in the Complaint that would create an inference that Defendants acted as an unregistered dealer in violation of Section 15(a) of the Exchange Act. If it was *not* one of the twelve (12) factors repeatedly identified in the plethora of Commission pronouncements, on its website, or it the authority cited in the Motion, Defendants should be entitled to know what led to the Commission's conclusion that Defendants acted as unregistered dealers. *See* Motion, pp. 7-10.

The Commission's Opposition has also incorrectly suggested that Defendants' Motion relies solely on "Commission No Action letters, a 16-year old proposed rulemaking comment, and

5

a securities law treatise." (Opposition at 1.)  The Commission has, however, ignored the fact that the Defendants also relied upon guidance currently provided by the Commission on its publicly-available website, as well as an appeal to the Commission itself, and *SEC v. Federated Alliance Group*, a federal case that relied on the same factors that the Defendants did in their Motion. (Motion, pp. 8-11).

### IV. THE COMMISSION HAS FAILED TO ALLEGE FACTS SHOWING THAT DEFENDANTS WERE "ENGAGED IN THE BUSINESS" OF BUYING AND SELLING SECURITIES FOR THEIR OWN ACCOUNT

Section 3(a)(5)(A) of the Exchange Act defines "dealer," in pertinent part, for the issue before this Court, as "any person engaged in the business of buying and selling securities . . . for such person's own account . . . ." 15 U.S.C. § 78c(a)(5)(A).  Section 15(a) provides, in pertinent part: "It shall be unlawful for any . . . dealer . . . to effect any transactions in . . . any security . . . unless such . . . dealer is registered. . . ." 15 U.S.C. § 78o(a)(1).  When read together, in pleading a violation of Section 15(a), the Commission is required to allege sufficient facts to show a plausible inference that Defendants (a) effected transactions in securities while (b) engaged in the business of buying and selling securities; (c) for their own account; (d) without registering with the Commission.  For purposes of the Motion before the Court, there is no dispute as to the adequacy of the Commission's allegations that Defendants bought convertible notes, converted them, sold the stock into which the notes converted through registered broker-dealers, received the proceeds into their own account and were not registered.  (*See* Opposition at 4.)  The issue before the Court is whether the Commission has adequately pleaded, in the affirmative, that Defendants were "engaged in the business of buying and selling" securities to show the Court that it is plausible that Defendants violated Section 15(a).

As pointed out in the underlying Motion, the Commission has relied entirely on conclusory statements that Defendants were "engaged in the business" because they bought and sold securities

6

"as part of a regular business." The Commission's Opposition has also failed to explain how Defendants' purported gain of $1.4 million through 58 transactions over 43 months (or, once every three (3) weeks), without "further factual enhancement," *Iqbal*, 129 S. Ct. at 1949, would lead to a plausible inference that Defendants were "engaged in the business of buying and selling securities," as opposed to acting as "traders." (*See* Motion at 10; Opposition at 7-8.) Indeed, as the Commission held in the *Sodorff* case, the definition of a "dealer" excludes "members of the public who buy and sell securities for their own account as ordinary traders, even though their trading may involve more than isolated transactions." *In re Sodorff*, 1992 SEC LEXIS 2190, *18 (SEC Sept. 2, 1990).

    **V.**    **THE COMMISSION HOLDS THE BURDEN OF PLEADING SUFFICIENT FACTS TO SHOW THAT DEFENDANTS WERE "ENGAGED IN THE BUSINESS OF BUYING AND SELLING SECURITIES"**

As both parties have stated, "[w]hether the Defendants were engaged in the business of buying and selling securities is a factual determination," but the Commission has attempted to put the cart before the horse in arguing that it should be entitled to conduct discovery first before having to plead the factors that would plausibly show that Defendants were not acting as traders, but as "dealers." The Commission has argued that its conclusory statement that Defendants were engaged in "regular" securities transactions (ignoring what context "regular" might mean) should be deemed sufficient under three (3) cases: *Offill*, *Big Apple* and *Eastside Church*. This argument is grossly misplaced—not the least because these cases are procedurally distinct: *Offill* arose from a motion for summary judgment; *Big Apple*, an appeal from motion for summary judgment; and *Eastside Church*, an appeal from judgment.

In *Offill*, the undisputed evidence showed that the defendant, Timothy T. Page, received shares of companies as compensation for assisting in taking them public; purchased additional shares directly from the companies; asked a third party to perform legal work necessary to take the

7

companies public; and hired co-defendants to conduct market awareness for the companies. In fact, the court actually stated that "Page was ***not buying and selling securities as an individual investor making isolated transactions, which would disqualify him as a 'dealer' under the statute***." *SEC v. Offill* 2012 U.S. Dist. LEXIS 9369, *36 (N.D. Tex. Jan. 26, 2012) (emphasis added).

The Commission's reliance on *Big Apple* is also misguided. In that case, Big Apple and a subsidiary entered into consulting agreements with clients, who were publicly traded companies. Those companies would issue stock to Big Apple at a significant discount for promoting the companies to brokers-dealers, including "us[ing] its call room to aggressively promote CyberKey [one of the companies] to broker-dealers" without disclosing its compensation for promoting CyberKey. *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 792-93 (11th Cir. 2015).[2] According to the Eleventh Circuit, "Big Apple and its subsidiaries depended on acquiring client stock and selling that stock to support operations and earn a profit." *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 809 (11th Cir. 2015). There are no analogous factual allegations here that Defendants purchased the stock of their own clients (or even had clients); engaged in a business that was, due to their efforts, a "pump-and-dump," which was the situation in *Big Apple*; or rendered any of the services that would be the hallmark of a dealer.[3]

---

[2]   The Commission's description of Big Apple's "business model" as offering "microcap issuers a variety of services, including marketing, business planning, and e-commerce website development and maintenance" to issuers completely misses the point of the *Big Apple* decision.

[3]   In this regard, the Commission's reliance on *Sodorff* is also unavailing. According to the Commission, "[a]mong other considerations, the Commission has noted that traders typically profit from appreciation in the value of securities, not the markup over the price paid." (Opposition at 4 n.1 (citing *In re Sodorff*, 1992 WL 224082, *5 (SEC Sept. 2, 1992)) The Commission has failed to address the "other considerations" that were described immediately after that sentence and that were cited in the Motion: "Sodorff solicited investors and handled their

In *Eastside Church*, the court found that the defendant, National Plan, Inc., was a dealer as a result of the following evidence:

> [T]he principal business of National was to 'put on bond issues to build churches.' . . . National went to churches where they had been requested to put on bond programs, assisted the church in doing all of the legal work concerning the bond program, took care of the necessary printing, handled all of the paper work in connection with the bond issue, acted as fiscal agent and trustee of the property, and directed the bonds sales program.

*Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357, 361 (5th Cir. 1968). Again, there are no analogous allegations in the Complaint at issue here that would place Defendants within the same degree of participation as the defendant in *Eastside Church*.

In each of these cases, the defendants-dealers were found to have engaged in at least some of the twelve (12) factors identified by the SEC Staff in No-Action Letters, as referenced in the Motion. (Motion at 9-10.)  *See Sodorff*, 1992 WL 224082 at *18. Without allegations that Defendants also engaged in some combination of these factors, the Complaint is facially deficient for failing to allege that Defendants were engaged in the business of buying and selling securities.

### VI.  THE COURT SHOULD NOT DISREGARD DEFENDANTS' DUE PROCESS RIGHTS

The Court should not entertain the Commission's request that it "disregard" Defendants' due process arguments because it relies upon Commission No-Action letters and a rule-making statement. In *SEC v. Federated Alliance Group*, 1996 U.S. Dist. LEXIS 12499 (W.D.N.Y., Aug. 21, 1996), a federal court, recognizing the lack of judicial examination and interpretation in distinguishing between dealers and traders, specifically sought guidance from Commission No-Action Letters. (Motion, p. 11).  Moreover, while the Commission has been dismissive about the

---

money and securities, rendered investment advice, and sent subscription agreements to investors for their review and signature, ***all of which are characteristics of dealer activity***." *In re Sodorff*, 1992 SEC LEXIS 2190, *18 (SEC Sept. 2, 1992) (emphasis added).

9

use of No-Action Letters, the Eleventh Circuit has looked to SEC No-Action Letters in resolving disputes over terminology and definitions that are germane to the securities industry. *SMF Holdings, Ltd. V. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1339 (11th Cir. 2010); *see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010). These No-Action Letters have provided the guidance to the public from Plaintiff, an arm of the United States government, as to the distinction between a trader and a dealer. If these No-Action Letters were disregarded, as the Commission now requests, in favor of capriciously reversing the Commission's longstanding guidance, then Defendants would be deprived of their due process rights.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the SEC's Complaint.

Respectfully submitted,

**SALLAH, ASTARITA & COX, LLC**
3010 N. Military Trail, Ste. 210
Boca Raton, FL 33431
Tel.: 561-989-9080
Fax: 561-989-9020
_____/s/Joshua A. Katz_____
James D. Sallah, Esq., (Lead Counsel)
Fla. Bar No. 0092584
jds@sallahlaw.com
Jeffrey L. Cox, Esq.
Fla. Bar No. 0173479
jlc@sallahlaw.com
Joshua A. Katz, Esq.
Fla. Bar No. 0848301
jak@sallahlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via EFC on all counsel or parties of record on the service list.

By: **/s/Joshua A. Katz**