## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 17-62255-Civ-COOKE/HUNT** |
| | : | |
| **v.** | : | |
| | : | |
| **IBRAHIM ALMAGARBY and MICROCAP EQUITY GROUP, LLC,** | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE THE EXPERT OPINIONS OF JAMES R. BURNS

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this motion and memorandum in support seeking an order excluding from evidence the expert report and opinion testimony of James R. Burns. Burns, a securities lawyer, offers a series of legal opinions as expert testimony, including an opinion that the SEC has not alleged sufficient facts to establish that the Defendants acted as "dealers." Such opinions, however, are an attempt to bolster the legal arguments of defense counsel, many of which have already been considered and rejected by this Court. Burns' opinions intrude on the province of the Court and should be excluded under FRE 702 and case law and relevant legal authority.

## II.   BACKGROUND

The Complaint in this action alleges that Almagarby and Microcap Equity Group violated Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") by buying and selling securities for their own account as part of a regular business without registering with the SEC as dealers between January 2013 and July 2016.[1] Almagarby engaged finders to identify microcap issuers with debt on their books who were willing to pay down debt through the issuance of new shares of company stock. Almagarby would purchase a portion of the issuers' debt, enter into

---

[1] The Complaint also charges Almagarby with liability for Microcap Equity Group's violations of Section 15(a)(1) as a controlling person of the company under Exchange Act Section 20(a).

agreements with the issuers to repay him in newly issued shares discounted below market prices, convert the debt into shares, and sell the shares into the market.

Defendants filed a motion to dismiss the Complaint pursuant to FRCP Rule 12(b)(6). [Doc. 10, 12, 13]. Following oral argument, the Court denied the motion. [Doc. 43]. On October 18, 2019, the parties filed cross-motions for summary judgment. [Doc. 73, 74, 75, 79, 80, 82, 83]. Briefing for the motions was completed on November 18, 2019. [Doc. 86, 87, 88].

On November 4, 2019, Defendants served the SEC with the expert report of James R. Burns, a copy of which is attached hereto as Exhibit A. On December 2, 2019, the SEC served the Defendants with the rebuttal expert report of Robert W. Lowry, a copy of which is attached hereto as Exhibit B.[2]

### III.   SUMMARY OF ARGUMENT

Burns offers a collection of legal conclusions that invade the province of the Court. The Court is fully capable of addressing the legal issues in the case without input from Burns. Burns employs no generally accepted methods or techniques. He performs no analysis of the relevant trading records or other available data that could be helpful to the jury. Burns' focus is on the sufficiency of the SEC's allegations and whether this case is a departure from SEC enforcement practices as he understands them. Among the more glaring problems with Burns' opinions:

(1) Burns intrudes on the domain of the Court and the jury in opining that the Defendants are not "dealers" within the meaning of Section 3(a)(5) of the Exchange Act and that they cannot, therefore, be found to have been operating as unregistered dealers in violation of Section 15(a) of the Act. Burns concedes that there is nothing in his report that defense counsel in this case could not have argued in their legal briefs. In fact, the arguments in Burns' report are remarkably similar to the arguments that Defendants raised in their unsuccessful motion to dismiss.

(2) Burns' principal opinion is that the allegations in the SEC's Complaint are insufficient to establish that the Defendants are "dealers." In offering this opinion, Burns was unaware that the Court already rejected this argument in response to the Defendants' Rule 12(b)(6) motion. Burns may not offer *any* legal opinions, let alone legal opinions that are contrary to rulings that the Court has already made in this case.

---

[2] The SEC proffered Lowry's rebuttal report as a precautionary measure. The SEC does not intend to call Lowry at trial if this motion is granted and Burns' testimony is excluded.

(3)  Burns' opinions are impressionistic and conclusory.  Burns performs no meaningful analysis of the Defendants' trading activity and makes no effort to obtain or analyze facts that he, himself, concedes would be relevant to the question of whether Defendants were engaging in "dealer" and underwriting activity.  Burns fails to study or to analyze the available data.  Experts who make no serious effort to understand or analyze the relevant facts—even when they are *not* offering legal opinions like Burns—are not helpful to the fact-finder.

(4)  Burns acknowledges that his report was modeled on one that the judge rejected in *In the Matter of Ironridge Global Partners, LLC, et al.,* Administrative Proceeding File No. 3-16649 ("*Ironridge*"), a recent and closely related unregistered dealer case before the SEC.  In *Ironridge*, an administrative law judge ruled that Burns' report was a legal brief, that the Court would not consider it, and that Burns would be prohibited from testifying as an expert witness.  Burns conceded that he used his *Ironridge* report as the template for his report in this case, employing no new or different methodologies.  The standards for admissibility in federal court are more stringent than those in administrative proceedings, where neither the Federal Rules of Evidence nor *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993), and its progeny are strictly applied.

(5)  Burns describes his policy concerns if the Defendants in this case are found to have acted as unregistered dealers.  Juries must determine the facts and apply them to the law in accordance with the Court's instructions.  Burns' opinions about the policy implications of an adverse finding against the Defendants are therefore not merely unhelpful and irrelevant; they would also undermine the process.  Juries may not be invited to ignore or nullify the law based on "policy considerations."

Burns' report is a piece of legal advocacy devoid of admissible expert opinion.  Burns' previous service in several positions at the SEC does not grant him a license to intrude upon the core competence of the Court—that of interpreting the law and instructing the jury.

## IV.  ARGUMENT

### A.  Standard for Admissibility of Expert Testimony

#### 1.  Rule 702 and *Daubert* and its Progeny

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the

> trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FRE 702.  Moreover, the admissibility of all expert testimony is governed by FRE 104(a). Amended FRE 702 Advisory Committee's Note.  Thus, the proponent of expert testimony has the burden of establishing "by a preponderance of the evidence" that it is admissible.  *Id.*  In addition to satisfying FRE 702, expert testimony must satisfy FRE 703 and 403.  *See Daubert*, 509 U.S. 579, 595 (1993).

In addition, evidence must be relevant to be admissible.  FRE 401 and 402.  Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence."  FRE 401.  Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  FRE 403.

Under *Daubert*, the district court in applying Rule 702 plays an important "gatekeeping role."  509 U.S. 579, 597 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (applying *Daubert* to non-scientific analysis); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  While expert admissibility rulings are committed to a district court's "broad discretion," *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996), the gatekeeping function is designed to ensure that "the courtroom door remains closed to junk science." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).  The purpose of the court's inquiry is "to ensure that the analysis 'undergirding the expert's testimony falls within the range of accepted standards governing how [experts in the relevant field] conduct their research and reach their conclusions.'" *U.S. v. $49,790 in U.S. Currency*, 763 F. Supp. 2d 1160, 1163 (N.D. Cal. 2010) (citation omitted).

In ruling on the admissibility of expert testimony, the Court analyzes: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony will assist the trier of fact.  *Daubert*, 509 U.S. at 593; *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005).

*Daubert* sets forth a non-exhaustive list of factors that are pertinent to determining reliability. These include a theory's known rate of error and whether "a relevant scientific community [has made] an express determination of a particular degree of acceptance within that community" of a given methodology. *Daubert*, 509 U.S. at 594 (citation omitted). An approach "which has been able to attract only minimal support within the community may properly be viewed with skepticism." *Id.* (internal citation and quotation marks omitted). Moreover, the question of whether the expert's testimony will assist the trier of fact is one of relevance, such that the testimony must be excluded if its probative value is substantially outweighed by the danger of confusing the issues or the jury. Fed. R. Evid. 403. Further, if the testimony is not "sufficiently tied to the facts of the case," it will not aid the jury. *Daubert*, 509 U.S. at 591.

The standard for admissibility of expert opinion set forth in *Daubert* and Rule 702 is not limited to scientific evidence. It has been extended to all testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Thus, whenever expert testimony is offered, the *Daubert* inquiry must be conducted, including an inquiry into whether the opinion is reliable and tied to the facts of a particular case. *Id.* at 150.

The party proffering the testimony bears the burden of establishing, by a preponderance of the evidence, that all requirements have been met. *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2011 WL 1674796, at *1 (S.D.N.Y. May 2, 2011).

## 2.   **Legal Opinions are Inadmissible**

Expert testimony is inadmissible if it expounds on issues of law or on the expert's view of "the legal significance of various facts adduced at trial." *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977); *see also Bilzerian*, 926 F.2d at 1294; *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact … and thus it is not 'otherwise admissible'"); *Kinder v. Acceptance Ins. Co.*, 423 F.3d 899, 905 (8th Cir. 2005) ("The opinions themselves were more or less legal conclusions about the facts of the case as presented to the experts by the shareholders. As a result, the expert opinions were merely opinions meant to substitute the judgment of the district court. When the expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements.") (citations omitted). *See also, Pinal Creek Group v. Newmont Mining Corp.*,

352 F. Supp. 2d 1037, 1042-1046 (D. Ariz. 2005) (expert "precluded from offering his opinion regarding the law that governs this case and federal anti-trust law").

Expert testimony instructing the fact-finder about the law invades the Court's province of determining the applicable law and conveying it to a jury.  *United States v. Scop,* 846 F.2d 135, 140 (2d Cir. 1988).  Such testimony is unhelpful to the Court in carrying out its legitimate functions, and creates the appearance that the Court is ceding to the witness the responsibility to decide the case.  *Id.*  (citations omitted).  "Permitting such testimony as to legal conclusions gives cogent meaning to the 'apprehensions that jurors will turn to the expert, rather than to the judge, for guidance on the applicable law.'"  *Adalman v. Julia M. Walsh & Sons, Inc.,* 807 F.2d 359, 366 (4th Cir. 1986) (citing 3 Weinstein and Berger, *Weinstein's Evidence,* 704-14 (1985)).[3]  Federal appellate courts routinely hold that the admission of such testimony may constitute reversible error.[4]  These courts have not hesitated to reverse trial court decisions admitting expert opinions on the law notwithstanding the trial courts' broad discretion in such matters.

---

[3] *See also, Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *Nieves-Villanueva v. Soto Rivera*, 133 F.3d 92, 99 (1st Cir. 1997); *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) (en banc) (reversible error to allow an expert witness who was an attorney to give his opinions on what was required to make consent to a search effective); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-14 (D.C. Cir. 1997); *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 197-98 (5th Cir. 1996) (trial court properly excluded taxpayer's expert reports as containing nothing more than legal arguments concerning the tax treatment of certain dividends); *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994); *Aguilar v. International Longshoremen's Union, Local # 10*, 966 F.2d 443, 447 (9th Cir.1992) ("matters of law for the court's determination" and "inappropriate subjects for expert testimony"); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir.1986) (expert opinion concerning whether, under securities laws, disclosure of a particular fact was required in the course of negotiating a transaction inadmissible); *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977) (securities lawyer, called as an expert, could not testify to the legal obligations created under a contract); *see also* 1 *McCormick on Evidence* § 12, at 50 (4th ed. 1992) ("Regardless of the rule concerning admissibility of opinion upon ultimate facts, courts do not permit opinion on a question of law, unless the issue concerns a question of foreign law."); *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *Midwest Inv. Advisory Serv., Inc.*, 940 F.2d 351, 357 (8th Cir. 1991); *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988).

[4] *See Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) ("Here, we find that the improper expert testimony substantially influenced the jury's verdict."); *Molecular Technology Corp. v. Valentine*, 925 F.2d 910, 919 (6th Cir. 1991) ("the trial judge repeatedly allowed plaintiffs' expert to testify as to the requirements of federal securities disclosure laws. Further,

The Eleventh Circuit follows the fundamental evidentiary rule that expert testimony on issues of law is inadmissible.  The Court stated in *Montgomery v. Aetna Cas. Sur. Co.*, 898 F.2d 1537 (11th Cir. 1990):

> An expert may testify as to his opinion on an ultimate issue of fact. Fed.R.Evid. 704.  An expert may not, however, merely tell the jury what result to reach. *Id.* at committee notes (merely telling jury what result to reach is not helpful to the jury and therefore is not admissible testimony). *A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.*

*Id.* at 1541 (emphasis added).  *See also*, *United States v. Oliveros*, 275 F.3d 1299, 1306-07 (11th Cir. 2001) ("Domestic law is properly considered and determined by the court whose function it is to instruct the jury on the law; domestic law is not to be presented through testimony and argued to the jury as a question of fact.").

### 3.    The Inadmissibility of Legal Opinions has been Repeatedly <u>Reaffirmed in the Context of the Federal Securities Laws</u>

The rule against expert testimony on issues of law applies the same way in the securities law context as it does elsewhere.  Expert testimony in securities cases "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).[5]

---

plaintiffs' counsel was allowed to comment on the improper expert testimony during closing arguments, increasing the likelihood that the jurors would be confused as to the correct application of law during jury deliberation."); *United States v. Scop,* 846 F.2d 135, 140 (2d Cir. 1988) (finding that the expert's "opinions were legal conclusions that were highly prejudicial and went well beyond his province as an expert in securities trading."); *Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 512 (2d Cir. 1977) ("we must reluctantly conclude that the leeway allowed Friedman was highly prejudicial to the appellant").

[5] *See also*, *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 178 (S.D.N.Y. 2008) (experts in securities cases should "assist the trier of fact in understanding trading patterns, securities industry regulations, and complicated terms and concepts inherent in the practice of the securities industry."); *Police Retirement System of St. Louis,* 940 F.2d 351, 357 (8th Cir. 1991) (improper expert testimony regarding the reach and meaning of the Exchange Act); *United States v. Scop,* 846 F.2d 135, 140 (2d Cir. 1988) (improper expert testimony about the meaning of the terms "manipulation," "scheme to defraud," and "fraud" under the securities laws); *Adalman v. Baker, Watts & Co.,* 807 F.2d 359, 368 (4th Cir. 1986) (improper expert testimony about "the meaning and applicability of the securities laws to the transactions" in the case); *Molecular*

In a recent case in the Middle District of Florida involving the definition of a securities "dealer," among other things, the Court excluded the defendants' expert report in its entirety on the ground that it consisted of legal conclusions.[6]  *SEC v. Big Apple Consulting USA, Inc., et al.*, Case No. 6:09-CV-1963-ORL-28GJK, 2011 WL 3753581 at *5 (M.D. Fla. Aug. 25, 2011). Among the opinions offered by the defense expert was that Big Apple was not acting as a broker dealer.  The Court stated:  "[The expert's] opinions are inadmissible because they are legal conclusions.  Whether Defendants are liable under § 15 turns on the issue of whether Defendants were broker dealers." Id.  The Court further stated:

> Expert opinions that 'offer nothing more than what lawyers for the parties can argue in closing arguments' generally do not assist the trier of fact. Similarly, expert opinions that are 'imprecise and unspecific' and those with a 'factual basis [that] is not adequately explained' could easily confuse a jury and therefore also do not assist the trier of fact. *Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting *Frazier*, 387 F.3d at 1266).  Although an expert opinion is not objectionable merely because 'it embraces an ultimate issue to be decided by the trier of fact,' Fed.R.Evid. 704(a), '[a]n expert witness may not testify as to his opinion regarding ultimate legal conclusions.' *United States v. Long*, 300 F. App'x 804, 814 (11th Cir.2008) (citing *Montgomery v. Aetna Cas.& Sur.Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

*Id.* *4.

---

*Technology Corp. v. Valentine,* 925 F.2d 910, 918-19 (6th Cir. 1991) (improper expert testimony about the requirements of the federal securities disclosure laws); *Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 510-12 (2d Cir. 1977) (improper expert testimony about whether certain trading constituted illegal manipulation under Section 9 of the Exchange Act); *Livingston v. Wyeth Inc.,* No. 1:03CV00919, 2006 WL 2129794, at *6 (M.D.N.C. July 28, 2006) (improper expert testimony about whether certain disclosures were protected under Sarbanes-Oxley Act of 2002); *United States v. Stewart,* No. 03 CR 717, 2004 WL 113506, at *2 (S.D.N.Y. Jan. 26, 2004) (improper expert's opinion about whether a particular application of the securities law is unusual or unprecedented).

[6] A portion of the SEC's expert opinion, provided by Robert W. Lowry, the SEC's expert rebuttal witness in the instant action, was also excluded.  *Id.* *5.   However, the other portions of Lowry's opinion based on his analysis of brokerage account statements, transfer agent records, records of the National Securities Clearing Corporation, and the price/volume Bloomberg reports were ruled admissible.  *Id.* *4-5.

**B.     The Court Should Exclude Burns' Testimony
Because it Consists of Legal Opinions**

Pursuant to FRE 702, expert testimony is only admissible if it "will assist the trier of fact

to understand the evidence or to determine a *fact* in issue."  FRE 702 (emphasis added).  The

Court should exclude Burns' testimony because he proposes to testify on legal matters which are

the sole province of the Court.  Burns is an attorney whose practice includes representing clients

in SEC enforcement matters.  (Nov. 14, 2019 Deposition of James Burns, the transcript of which

is attached hereto as Exhibit C, at 20-28).  Burns states that he reviewed information "consistent

with that typically relied upon by *legal experts* in an analysis of issues regarding registration as a

dealer."  (Ex. A, p. 5) (emphasis added).

Burns discusses the relevant statutes, agency guidance, and no-action letters and gives

opinions on the interplay between them.  (Ex. A, pp. 9-14).  In a section entitled, "Distinction

Between a 'Dealer' and a 'Trader,'" Burns offers legal opinions concerning the meaning of the

crucial statutory provisions.  *Id.*  The relationship between various sources of guidance and the

statute is an area on which the parties set forth their differing views in their summary judgment

papers.  It is not the proper role of the Defendants' expert to instruct either the Court or the jury

on the law, or to advocate for one interpretation or another.

Burns does not limit himself to legal opinions about the definition of "dealer."  He opines

directly on the ultimate legal issue in the case:  "I believe that the allegations set forth in the

SEC's complaint are insufficient to demonstrate that the Defendants violated Section 15(a) of the

Exchange Act by not registering as dealers.  Rather, I believe the Defendants should be

considered 'traders' under longstanding SEC guidance."  (Ex. A, p. 3).  Burns emphasizes his

conclusion that "the SEC's complaint does not allege facts sufficient to find that the Defendants

were required to register as dealers under Section 15(b) of the Exchange Act."  (Ex. A, p. 19).

 Burns advises in his report that "The views set forth herein are limited to *the issue of the*

*Defendants' status as 'dealers' under the Exchange Act* as alleged in the SEC's complaint and

do not address any other issues under the federal securities laws."  (Ex. A, pp. 5-6; emphasis

added).  Burns' limitation of his legal opinions to the one issue, however, does not make them

admissible.

Burns notes that his opinions come from his regulatory experience as well as his legal

expertise (Ex. A, p. 3); for purposes of admissibility, however, the distinction is lost on FRE 702.

Burns acknowledged that his opinions were based on "the same methods that practicing attorneys employ." (Ex. C, pp. 80:23-25 - 81:1-13). It cannot be seriously doubted that Burns offers legal opinions:

> Q So in determining the meaning of the
> 2 relevant statutes, the Court decisions, the
> 3 Commission decisions and Commission releases, do
> 4 you have some special methodology or techniques
> 5 that somehow stands apart from what other
> 6 securities lawyers do?
>
> 7 A Only in the sense of interactions
> 8 certainly when I was at the Agency with a broad
> 9 array of market participants. So most securities
> 10 lawyers don't have that experience from within
> 11 the Agency, whether just having conversations
> 12 about policy issues and the like. But otherwise,
> 13 no. Mine would be like other securities
> 14 practitioners.
>
> 15 Q Is there anything contained in
> 16 your report or in your opinions that the
> 17 attorneys in this case would not be able to argue
> 18 in their arguments and briefings in this case, to
> 19 your understanding?
>
> 21 THE WITNESS: Only insofar as my
> 22 experience might be informed differently than
> 23 theirs because of my experiences in the Agency
> 24 and my interactions. But I can't speak to the
> 25 lawyers in the case, what their own interactions
>    have been in that regard.
>
> 2 BY MR. GORDON:
> 3 Q I understand that there are
> 4 differences in experience and careers. But in
> 5 terms of the arguments you make about the
> 6 sufficiency of the complaint, the meaning of the
> 7 guidance and so forth, those are all arguments
> 8 that they could make if they wanted to, correct?
>
> 10 THE WITNESS: Yes.

(Ex. C, pp. 70-71)

### 1.   Burns' Opinion that the Allegations in the Complaint Are Insufficient Contradicts a Prior Holding in this Case

Burns' principal opinion is that the Complaint contains insufficient allegations to establish that the Defendants are dealers. (Ex. A, pp. 3, 19). Burns stated: "I understood my

task to be to focus on the complaint and the allegations in the complaint." (Ex. C, pp. 39:16-18). The Defendants, however, previously argued the insufficiency of the complaint in a Rule 12(b)(6) motion which reads very much like Burns' report. [Dkt. 13]. The Court denied the motion. [Dkt. 43]. Burns was unaware that a Rule 12(b)(6) motion had been filed, much less denied by the Court. (Ex. C, p. 57-60). At Burns' deposition, SEC counsel probed at length to make certain that Burns was, indeed, offering a legal opinion in direct opposition to the Court's prior ruling. He clearly was:

> Q Now, you stated -- and correct me if I
> 4 get this wrong. In answer to an earlier question
> 5 of mine, you stated that your focus was on the --
> 6 one of your focuses was on the allegations in the
> 7 complaint filed by SEC.
> 8 Is that accurate?
>
> 9 A Yes.
>
> 10 Q And was the principal or one of the
> 11 principal purposes of your expert engagement to
> 12 determine whether or not those allegations were
> 13 sufficient to state a claim against Mr. Almagarby
> 14 as a dealer?
>
> 15 A Yes.

(Ex. C, p. 55).

> 16 If you look at the top of Page 14, you
> 17 state, "I believe that the activities by the
> 18 defendants pled in the complaint lack the indicia
> 19 of dealer activity as set forth by the SEC and
> 20 the SEC staff, and a full consideration of the
> 21 various factors articulated by the SEC supports
> 22 the conclusion that the defendants should be
> 23 considered traders.
>
> 24 Have I read that accurately?
>
> 25 A Yes.
>
> 1 Q Again, your focus here is on the
> 2 activities that were pled in the complaint, the
> 3 allegations in the complaint, correct?

4 A That was the focus of the report, yes.

5 Q And then just to skip a sentence and
6 the next sentence on Page 14, you say, "On its
7 face, the SEC's complaint, which simply outlines
8 purchases of debt instruments and subsequent
9 sales of equity securities by the defendants, I
10 believe is insufficient to establish that the
11 defendants were dealers under the Exchange Act."

12 Have I read that accurately?

13 A Yes.

14 Q And is that -- you stand by that
15 statement?

16 A Yes.

17 Q Again, the focus there is on the
18 sufficiency of the allegations of the complaint.
19 Fair enough?

20 A Yes.

21 Q And that was really the core of your
22 assignment, correct?

24 THE WITNESS: Yes. So far.

(Ex. C, p. 55).

6 BY MR. GORDON:
7 Q So as an expert witness, based on your
8 report, it's your intention -- it will be your
9 intention to go before the jury and tell them
10 that the allegations in the complaint are
11 insufficient to establish that the defendants in
12 this case were dealers, correct?

14 THE WITNESS: If that remains the
15 scope of the assignment. If it's broadened to
16 encompass a broader part of the record, then it
17 might be more encompassing than just the
18 allegations in the complaint.

(Ex. C, p. 55).

**2.      An Administrative Law Judge Rejected
A Similar Report by Burns on the "Dealer" Issue**

Burns served as the Respondents' expert witness in *In the Matter of Ironridge Global*

*Partners, LLC, et al.*, Administrative Proceeding File No. 3-16649 ("*Ironridge*"), an SEC

enforcement action that closely parallels the instant case.  Ironridge, like Microcap Equity Group,

operated in the microcap financing space, obtaining billions of shares of stock from issuers at a

discount, and promptly selling the shares into the market.  *Ironridge*, Securities Exchange Act

Release No. 81443 (August 21, 2017).  The SEC alleged that Ironridge, like the Defendants in this

action, was an unregistered dealer in violation of Section 15(a) of the Exchange Act.[7]  *Id.*

Although Ironridge relied on Section 3(a)(10) (shares obtained in exchange for a *bona fide* claim)

to obtain shares that were exempt from registration, as opposed to Rule 144 (shares obtained in

exchange for aged debt), the source of Microcap Equity Group's exemption, the companies

operated in a similar fashion.  (Ex. C, p. 72).

Burns' report in the instant case closely tracks the one he submitted in the *Ironridge* case, a

copy of which is attached hereto as Exhibit D.  Burns readily acknowledged that the *Ironridge*

report served as a template for his report in this case.  (Ex. C, p. 72:17-22).[8]  He conceded that

there is language common to both reports, and that there are similarities in the opinions expressed

and the basis for those opinions.  (*Id.*, pp. 74-75).

---

[7] In *Ironridge*, the Commission made findings and imposed sanctions upon the Respondents in
connection with their settlement of the charges. The Commission found that the Respondents
violated Sections 15(a) and 20(b) of the Exchange Act by operating as an unregistered dealer in
securities by engaging in serial underwriting activity, providing related investment advice, and
receiving and selling billions of shares in connection with self-described financing services for
microcap stock issuers utilizing the registration exemption in Section 3(a)(10) of the Securities
Act.

[8] Q: [W]ould it be fair to say that to some degree, your *Ironridge* report served as sort of a
template for your report in this case?  A: "It absolutely would have, yes."  (Ex. C., p. 74:17-22).

In *Ironridge*, the administrative law judge found that "Burns' expert report was "in substance a legal opinion," and he declined to rely on it.[9]  *In the Matter of Ironridge Global Partners, LLC, et al*., Administrative Proceedings Rulings Release No. 4409, December 2, 2016, p.1 (attached hereto as Exhibit E; also available at https://www.sec.gov/alj/aljorders/2016/ap-4409.pdf).  The judge also foreclosed the Respondents from calling Burns as a witness.  (*Id*.).  Burns did not change his approach in the instant case despite his awareness of the judge's decision in *Ironridge* (Ex. C, p. 75:7-24), stating that "different courts can take different views …" (*id.*, pp. 79:14-15).  Burns is undoubtedly correct, but his response does not take into account the overwhelming body of case law interpreting FRE 702 as prohibiting expert opinions on legal issues.

### 3.  Burns Does Not Analyze or Present Facts Relevant to the "Dealer" Issue

As noted, Burns' principal opinion concerned the sufficiency of the allegations in the complaint.  Burns' focus on legal issues was matched by his *lack* of focus on the pertinent facts.  The plain language of Rule 702, however, emphasizes that helping the jury better understand the *facts* is central to the expert's role, stating that a qualified expert may testify only if

> (1) the testimony is based upon sufficient *facts or data*, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the *facts* of the case.

---

[9] The Court found that an exhibit to Burns' report prepared by a prospective witness (a principal of the Respondent entity) entitled "Deals Analysis," analyzing certain data, was not a legal opinion and would be considered.  The Court also found that while certain portions of the expert report of Robert W. Lowry (also the SEC's rebuttal expert witness in the instant case) would be disregarded as legal conclusions, other portions were helpful and would be considered.  "[M]uch of [Lowry's] report is devoted to financial analysis and summary exhibits," and was "helpful and plainly admissible."  *In the Matter of Ironridge Global Partners, LLC, et al*., Administrative Proceedings Rulings Release No. 4409, December 2, 2016, p.2.

FRE 702 (emphasis added).  Burns based his opinions on his "review of the allegations in the

complaint, consultation with the Defendants,[10] deposition testimony by Mr. Almagarby provided

to the SEC during its investigation,[11] and such legal and regulatory precedents as I have deemed

relevant to the matter."  (Ex. A, p. 5).  Burns' report contains no analysis of the Defendants' trading

patterns, trading frequency, trading volume, holding periods, share discounts, profitability,

extensive use of finders,[12] investment intent, underwriter characteristics, or other factors Burns

---

[10] At his deposition, Burns stated that his consultation with the Defendants consisted of a
telephone call with Almagarby lasting approximately half an hour (Ex. C. 49-52) which he
characterized as "a little bit of an introduction."  (*Id.*, pp. 51:13).

2 Q Okay. And when you spoke to
3 Mr. Almagarby, did you -- were you trying to --
4 did you ask him questions to try to determine
5 whether or not he could be considered a dealer?
6 Did you ask probing questions on that subject?
7 A No, no.
8 Q Did you go through with him the
9 factors that you think are relevant to
10 determining whether or not one is a dealer with
11 Mr. Almagarby?
12 A I don't recall having done that.

[11] It is highly unlikely that Burns relied upon the testimony that Almagarby provided to the SEC
during *its investigation*, as Almagarby gave no substantive testimony and repeatedly invoked his
Fifth Amendment privilege against self-incrimination when he appeared in response to an
investigative subpoena for his testimony on January 12, 2015.  Burns was likely referring to
Almagarby's deposition testimony in this action that he gave on June 27, 2019.

[12] Burns acknowledged that he did not delve into the facts relating to the Defendants' use of
finders to generate deals:

Q So, for example, you made no attempt
to -- let's say on the advertising component, you
made no attempt to go to Mr. Almagarby and say,
"Wait a minute. Let me ask you this. What was
your relationship with these finders? How did
they -- how do you interact with them? How do
they fund themselves? I need to determine
whether or not you were engaged in solicitation."
Did you do that sort of inquiry?
…
THE WITNESS: I did not.

(Ex. C, pp. 115:23-116:8).

acknowledged to be relevant to whether the Defendants were dealers and whether they were engaged in underwriting activity.  Burns included none of the kinds of data analysis or summaries that the judge in *Ironridge* cited as the only admissible parts of the expert reports that were submitted.  Instead, Burns did what he called "a common sense evaluation."  (Ex. C, p. 115:1-11).

Burns' opinion that the Defendants were "traders," not "dealers," in addition to being a legal conclusion, is what the Court in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) referred to an "*ipse dixit*" (*i.e.*, unproven statement).[13]  Burns' opinion is not supported by any meaningful factual analysis or methodology.  Instead, Burns offers his opinions based primarily on his review of the allegations as informed by his "experience."  In fact, he states in his report that his opinion on the ultimate legal issue is "based upon my professional experience both as a former regulator and a practitioner."  (Ex. A, p.3).  Burns' qualifications as a securities lawyer and former regulator do not make his opinions admissible, however, because his report fails the test of FRE 702 on all three counts:  (1) his testimony is *not* based on sufficient facts or data, (2) his testimony is *not* the product of reliable principles and methods, and (3) he has *not* applied any principles and methods reliably to the facts of the case.

Burns' lack of focus on the pertinent facts became even more apparent at his deposition.  In his report, Burns quoted from a treatise stating that persons who engage in trading for *investment purposes* might be regarded as so-called "traders" (*i.e.*, not engaged in buying and selling securities as part of a business) rather than dealers even if they sometimes hold positions for a short time. (Ex. C, p. 96:6-17).  At Burns' deposition, SEC counsel asked him whether he had an opinion as to whether the Defendants had "investment purposes," in view of Almagarby's statements that he wanted to convert and sell the shares as quickly as possible, his payment of substantial finders'

---

[13] "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Kumho Tire Co.*, 526 U.S. at 157 (quoting *General Electric Company v. Joiner*, 522 U.S. 136, 146 (1997).

fees, his reliance on substantial discounts to profit from the sale of shares, and his performing no

due diligence on the issuers:

> Q [H]ave you formed any
> conclusions based on your knowledge of the facts
> in this case about whether the defendants in this
> case bought and sold securities for investment
> purposes?
>
> (Ex. C, p. 99:13-17).
>
> THE WITNESS: I -- I haven't formed an
> opinion about whether they bought and sold for
> investment purposes. His testimony suggested he
> wanted to get in and out of the market quickly,
> but I'm -- you know, I haven't plumbed the depths
> of that.
>
> (Ex. C, p. 99:24-100:4).

Burns' opinion that the Defendants were "traders" without considering the "investment purposes"

issue shows why conclusions that are tied only loosely, if at all, to the relevant facts are of little

value.  In fact, Burns acknowledged that the following factors—about which he performed no

analysis—*could* have a bearing on whether or not purchases and sales were done for investment

purpose (and, by extension, whether a buyer and seller of securities could qualify for the "trader"

exception):  (1) obtaining stock at deep discounts with the intention to sell it into the market as

quickly as possible (Ex. C, p. 97:13-25); (2) relying primarily on the discount and being able to

profit regardless of how the share price moved (Ex. C, p. 98:18-24); and (3) performing little or no

due diligence on the investment quality of the stock (Ex. C, p. 98:25-99:1-11).[14]

Burns offers no opinion in his report on whether the Defendants were engaged in

underwriting, although the Defendants have repeatedly pointed to guidance which includes

underwriting activity as a factor in determining whether one is a dealer.  At his deposition, upon

---

[14] Burns' failure to address in his report how he considered Almagarby's "investment purpose" in reaching his opinions that the Defendants were not dealers, in the face of "multiple red flags that he should have addressed" was a deficiency noted by the SEC's expert witness, Robert W. Lowry.  (*See* Ex. B, pp. 11-13).

inquiry, Burns offered an off-the-cuff opinion on the subject that was devoid of any factual analysis of the Defendants' repeated purchases of newly issued shares from issuers and rapid sales of the shares into the market, but that relied, instead, on Burns' supposed "common sense" analysis.[15]

Burns' opining on the "dealer" issue without contending with the underlying trading patterns that form the principal basis for the SEC's allegations is a shortcoming in Burns' report that was noted by the SEC's expert witness, Robert W. Lowry, in his rebuttal report:

> Burns' expert report does not describe any trading data that would or would not support the opinions that he expressed in his report; nor does the report address the short-term holding periods. Burns made reference to 'reviewing the facts' but was vague about what facts he reviewed.

(Ex. B, p.7).  Lowry also observes that "Burns does not meaningfully consider whether the Defendants were engaged in underwriting activity or involved in distributing shares obtained from

---

[15] Q Okay. Do you have a view as to whether or not Mr. Almagarby and MEG's obtaining of shares from issuers and moving them into the market was underwriting?

A I think it was not.

Q Okay. Why do you believe that?

A Because if it were the case for him, then anyone who has a convertible debenture could be described as a dealer.

Q Okay. Aside from what would follow from that holding and your -- I guess some sort of common sense view, why else do you believe – based on the definition, why do you believe he was not an underwriter?

A In the course of practice, I -- it just doesn't -- I'm sorry. It just doesn't look like underwriting activity. It doesn't look like the way an issuance of IBM would happen. It doesn't look like the way a principal underwriter would do what it's doing or a member of a syndicate would participate.

(Ex. C, pp. 120:24-121:19).

issuers at crucial points in the chain of distribution. These are crucial considerations in determining whether one is engaging in dealer activity, and Burns' failure to address these factors is a major deficiency in his report." (*Id.*, p. 14).

### C.    Burns' Public Policy Arguments are Inadmissible

Burns concludes his report with his "policy concerns" about "the SEC's allegations as set forth in the complaint." (Ex. A, pp.15-19). Burns' "policy concerns" are a blend of quasi-legal and policy opinions that are not the proper subject of expert testimony because they are of no relevance to the factfinder's role. His concerns include the creation of "regulatory uncertainty" among some market participants (*id.* at 15); the SEC's "obligation … to provide fair notice of a change in an interpretative position before pursuing an enforcement action" (*id.* at 15-16); and the absence of formal rulemaking in advance of the enforcement action. (*Id.* at 16).

Burns' opinions on these matters are irrelevant because they are beyond the scope of the jury's fact finding role. The jury's role is to apply the law, as instructed by the Court, to the facts, in order to determine whether the Defendants are liable for acting as dealers in securities without registering with the Commission. Policy considerations are the province of the Commission, not the jury, which is sworn to apply the law in accordance with the Court's instructions.

## CONCLUSION

For all the reasons stated herein, and any other reasons deemed appropriate by the Court, the SEC respectfully requests that the Court find that Burns' opinions are inadmissible and prohibit him from testifying at trial as the Defendants' expert witness.

## CERTIFICATION OF PRE-FILING GOOD FAITH CONFERENCE

As counsel for the SEC, I hereby certify that I have conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised herein, and have been unable to do so.

Dated:  December 20, 2019

Respectfully submitted,

*/s/Robert K. Gordon*
Robert K. Gordon
William P. Hicks
Securities and Exchange Commission
950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326
Tel.: 404-842-7600
Fax: 404-842-7666

Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2019, I served a true and correct copy of the foregoing motion by filing it with the Clerk of Court using the CM/ECF system.  The filing system will automatically send e-mail notifications of such filing to the registered counsel of record.


*/s/ Robert K. Gordon*