# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

_____
:
**SECURITIES AND EXCHANGE**          :
**COMMISSION,**                      :
                                     :
    **Plaintiff,**          :          **Case No. 17-62255-Civ-COOKE/HUNT**
                                     :
      **v.**          :
                                     :
**IBRAHIM ALMAGARBY and**            :
**MICROCAP EQUITY GROUP, LLC,**      :
                                     :
    **Defendants.**         :
_____:

### REPORT OF EXPERT WITNESS ROBERT W. LOWRY IN RESPONSE
### TO REPORT OF DEFENDANTS' EXPERT WITNESS

### I.      Qualifications

My qualifications are set forth in the curriculum vitae which is attached to this report.[1] I have more than 45 years of experience in the securities industry, including 23 years with the Securities and Exchange Commission ("SEC") in the Division of Market Regulation. I have conducted numerous broker-dealer examinations and self-regulatory oversight inspections of the National Association of Securities Dealers, Inc. ("NASD"), which is now known as the Financial Industry Regulatory Authority ("FINRA"), and the New York Stock Exchange ("NYSE") while working in the Division of Market Regulation.[2]

---

[1] See Expert Exhibit 1.

[2] FINRA was created through the consolidation of the NASD and the member regulation, enforcement and arbitration operations of the New York Stock Exchange. The consolidation, which was announced on Nov. 28, 2006 and approved by the Securities and Exchange Commission on July 26, 2007, became effective on July 30, 2007.

1

While at the SEC, the Division of Enforcement staff frequently consulted with me on cases involving markups, over-the-counter trading and sales practice abuses. I also assisted the Division of Enforcement on complex investigations and litigation matters pertaining to broker-dealer activities, including matters involving market manipulation and disclosure issues. My SEC enforcement experience included taking investigative testimony, analyzing trading data and customer account statements, preparing affidavits and schedules, and giving factual and expert witness testimony in federal court on three different occasions (*SEC v. First Jersey Securities, SEC v. Thomas James, and U.S. v. Eric Wynn*). While I was employed at the SEC, I served as an expert, and I was successfully qualified as such, in the areas of markups (*SEC v. Thomas James)* and securities trading in the over-the-counter market (*U.S. v. Eric Wynn*). I testified as a summary witness on the third occasion (*SEC v. First Jersey Securities*).

I am familiar with how securities markets operate (e.g., the various types of Exchange and over-the-counter ("OTC") markets); the rules, regulations, customs and practices of the securities industry; and the role of specialists, market makers and transfer agents. I am also familiar with how securities prices are determined, how to detect indicia of manipulated and non-competitive markets, the purchase and sale of private placement offerings, and the obligations of individuals who are designated with the supervisory responsibility of registered representatives ("RRs" or "brokers").

I have been retained in more than 700 matters ranging from securities arbitration, state and federal regulatory proceedings, criminal and civil proceedings in state and federal courts, as well as compliance-related audits for broker dealers and investment advisers. I provide consulting services to federal and state regulatory agencies, securities attorneys, litigants, broker-dealers and investment advisers throughout the US. I have been retained by Plaintiffs or Claimants (including the SEC, state securities regulators, the Department of Justice, broker dealers, investment advisers, hedge funds, and individuals). I specialize in matters involving best execution, market manipulation, sales practices, suitability, investment advice, churning, damages, excessive trading, clearing firm liability, sale of unregistered securities, selling away and the supervision of broker-dealers and investment advisers.

2

Since 1996, I have appeared in federal court, criminal and civil, on more than 50 occasions. I have published articles which addressed the subjects of supervision and best execution for the Practicing Law Institute and the Public Investors Arbitration Bar Association.[3]

My recent engagements include an assignment as an expert witness on behalf of the Division of Enforcement in *SEC v. Big Apple Consulting USA. Inc.,* No. 6:09-cv-1963- Orl-28GJ (M.D.Fla.), in which I was qualified  as an expert in federal district court on the practices of broker-dealers *(see, SEC v. Big Apple Consulting USA, Inc.,* 2011 WL 3753581 at *3 (M.D.Fla. Aug. 25, 2011) [holding that defendants were dealers under the Exchange Act and violated the Act by failing to register]), and opined on, among other things, whether the activities of a company were consistent with the activities of a dealer under the federal securities laws.  I have also prepared expert reports for the Division of Enforcement in two other assignments - *In the Matter of Ironridge Global Partners, LLC, et al.;*[4] and *SEC v. Caledonian Bank, et al.,*[5] which involved issues that are applicable in this case.

## II.    Engagement

I have been engaged by the Division of Enforcement to review the expert report of James Burns and provide rebuttal opinions.  That report, dated November 4, 2019, addressed whether:  (1) the activities of Ibrahim Almagarby ("Almagarby") and Microcap Equity Group LLC ("MEG") (collectively "Defendants") fell within the definition of "dealer" set forth in Section 3(a)(5) of the Securities Exchange Act of 1934 ("Exchange Act"), and (2) required that they register as a broker-dealer with the SEC.  In response to that report, I have reviewed and analyzed certain activities of Defendants in order to determine the extent to which Defendants' activities were consistent with the roles and

---

[3] A list of these cases is attached as Expert Exhibit 2.

[4] I was retained as an expert witness on behalf of the Division of Enforcement, and I prepared an expert report.  Securities Exchange Act Release No. 81443. August 21, 2017 Administrative Proceeding File No. 3-16649.

[5] I was retained as an expert witness on behalf of the Division of Enforcement, and I prepared an expert report.  Case No. 15-cv-894 (WHP).

activities performed by underwriters and dealers in the securities industry rather than the activities of "traders" or "investors."  My engagement included review and analysis of the impact on the market of Defendants' activities in the absence of regulatory oversight by the SEC and FINRA.  My engagement started on September 17, 2019, and charges for my services are billed at the rate of $275 per hour.

## III.    Basis for Opinion

My opinion is based on my (1) more than 45 years of experience in the securities industry; (2) knowledge of the customs and practices of the securities industry; (3) working knowledge of federal securities laws, rules and regulations, as well as the rules and regulations of FINRA; (4) review of the deposition testimony of Almagarby, Burns, and Anthony Fusco; (5) review of the Jerome DeWitt declaration, including spreadsheets, that was filed in support of the SEC's motion for summary judgment, and my independent examination and verification of the trading data he referred to in his declaration; (6) review of spreadsheets and schedules I prepared, which summarized the MEG documents and trading data I reviewed; (7) review of Assumption and Assignment Agreements; (8) review of MEG broker-dealer account statements; (9) review of Exchange Agreements; (10) review of Convertible Debentures and Loans; (11) review of Notice of Conversions; (12) review of Reset of Conversion Price Notices; (13) review of the pleadings; and (14) review of MEG's Wells Fargo bank records.

## IV.    Summary of Opinion

In considering the opinions that Burns expressed in his expert report, I reviewed the activities of Defendants Almagarby and MEG, and I concluded that Burns' opinion that the Defendants' activities were not characteristic of dealer activity was unsupported.[6]  In my review, I found that Defendants (1) acquired 8.4 billion shares of newly issued micro-cap securities in a three and one-half year period ("trading period") and (2) sold more than 7.6 billion shares (more than 90%) within the trading period.[7]  These unregistered shares were directly

---

[6] See Summary Exhibit 1 which summarizes MEG's acquisitions and sales for each of the 37 companies.

[7] The trading period started in January 2013 and ended in July 2016.

acquired from the issuers and were deposited into securities accounts at multiple broker-dealers.  I determined that approximately 4.9 billion shares were sold within 30 days after they were deposited into brokerage accounts.  The proceeds from these sales totaled more than $3.9 million.

It was important for me to examine these transactions in detail so that I could understand how long Almagarby held the stocks before selling them.[8]  It is my opinion that the general practice of selling shares immediately, or as soon as there was sufficient liquidity in the market, is *not* consistent with an investor who is acquiring shares for investment purposes.  Almagarby's business, which consisted of repeatedly obtaining shares directly from issuers through negotiated transactions and at deep discounts to the market price, with the intention of reselling those shares into the public market as soon as practicable, resulted in Almagarby, through MEG, engaging in activities which were  consistent with the activities of an underwriter and a dealer.[9]   Almagarby confirmed my opinion in that he testified that it was his intent to sell the shares within a few days after the shares were deposited into his brokerage accounts.[10]

Page 106
6      Q.     And then when you deposited the stock with
7             the intention that you would sell it within a few
8             days.
9      A.     Correct.

I used this information, along with other information referenced below, as a basis to consider the opinions that Burns expressed in his expert report and deposition testimony.  I determined that, contrary to Burns' opinion, Almagarby and MEG engaged in business as a dealer and that Burns failed to properly

---

[8] Although Defendants' expert did not review each transaction, he testified he reviewed DeWitt's declaration and charts.

[9] The definition of "underwriter" is any person who has purchased from an issuer with a view to, or offers to sell for an issuer in connection with the distribution any security.  See *SEC v. Big Apple Consulting USA, Inc.*, supra, page 41.  A "distribution" of securities is the process by which securities move from the issuer to the investing public.

[10] Deposition testimony of Ibrahim Almagarby, June 27, 2019, page 106.

address various aspects of their conduct which indicated that they were engaged in the regular business of buying and selling securities in a manner inconsistent with what one would expect from a trader or investor.

## V.     Rebuttal Opinion

My trading analysis was based on my review of the pertinent documents referenced above and Almagarby's testimony.  In my experience, the purchase of unregistered and newly issued shares from the issuer and the sale of those shares after holding them for a short period of time is consistent with the activities of an underwriter and/or dealer because these activities played a key role in the distribution of those shares to the investing public.  Defendants sold more than 7.6 billion shares that they obtained from issuers at a discounted price by converting debt instruments (convertible debt instruments and promissory notes) to shares of common stock.  Defendants purchased these debt instruments from existing debt holders.  According to MEG's bank records, Defendants paid "finders" more than $500,000 to identify existing debt holders who were interested in selling their debt.[11]

My review of Defendants' trading records was an essential part of my analysis, and it was a principal basis for my opinions in this report.  It was important for my analysis that I could calculate the holding periods (i.e., the length of time a security was owned before it was sold) for all of the 37 securities.[12]  For example, I measured how much time elapsed from the date of a debt purchase to the first date shares were sold and I measured how much time elapsed before all the shares of a particular issuer were sold.

---

[11] I reviewed the testimony of Anthony P. Fusco, who appears to be the largest source of these referrals. Fusco's company, Bridgewater Capital Group, LLC, and Fusco, personally, received payments totaling $376,000.  Fusco testified that he used the services of independent contractors to cold-call companies in order to identify potential sellers.

[12] See Summary Exhibit 2, which is a chart that identifies each of the 37 companies that Defendants acquired and subsequently converted into common stock. The chart details the debt purchase date, the dates the shares were deposited into brokerage accounts and the dates the shares were sold.

### 1. Holding Periods

As I noted in my qualifications, I was the expert for the SEC in the *SEC v. Big Apple Consulting* case.  The holding periods for the unregistered securities MEG acquired in this case are much shorter than the holding periods described in the Big Apple case.  In this case, the holding periods are just days,[13] rather than the six months or two-year periods cited by the 11th Circuit Court of Appeals in the *Big Apple* opinion.[14]

MEG immediately converted the debt it acquired into shares and deposited the shares into brokerage accounts.  Thereafter, these shares were sold generally within days after they were deposited into brokerage accounts.

Burns' expert report does not describe any trading data that would or would not support the opinions that he expressed in his report; nor does the report address the short-term holding periods.  Burns made reference to "reviewing the facts" but was vague about what facts he reviewed.

Burns testified as follows:[15]

Page 117
11      THE WITNESS:        Well, I was focused on
12      reviewing the facts and seeing whether I thought
13      Mr. Almagarby should be regarded as a dealer or

---

[13] See Summary Exhibit 2

[14] "Here, defendants claim that they "held onto [CyberKey] stock for months, if not half a year, maybe even longer." Six months falls well short of the two-year "rule of thumb" to determine whether the securities were received with a view to distribution."

The evidence asserted by the SEC paints an even bleaker picture for the defendants. As the SEC expert explained:

> MJMM had acquired 301.8 million CyberKey [ ] shares as of November 9, 2006, and by December 7, 2006, all of these shares were sold. On December 7, 2006, MJMM had net sales totaling 304.3 million shares. By the end of the year, MJMM sold more than 75% of the 200 million CyberKey [ ] shares it acquired after June 30, 2006, and it sold the remaining shares by January 23, 2007 . . .

[15] Page 77 of Burns' Deposition testimony transcript.

14     not.   And I didn't see anything in the record
15     that persuaded me he should.

Burns again testified that he did not consider the trading records but instead testified that he looked at the complaint and tried to do "a common sense evaluation" whether any of the factors were met.  He does not mention holding periods or investment purpose.

Page 114
14     Q     Are you saying that you yourself have
15     not conducted a searching analysis of all the
16     factors that might or might not make the
17     defendants dealers, such as investment intent,
18     holding one's self out, advertising?  You have
19     not conducted such a searching analysis in order
20     to make a determination based on all the
21     available facts available to you, including Mr.
22     Almagarby's availability to you, as to whether or
23     not Mr. Almagarby and his company acted as
24     dealers?
25     MR. KATZ:    I'm going to object.
Page 115
1      THE WITNESS:       So I -- I looked at the
2      record.  I looked at the complaint.  I looked at
3      the factors that the SEC and I did sort of -- I
4      tried to do a common sense evaluation of whether
5      any of the factors would -- were met, such as
6      regular clientele, holding one's self out at a
7      regular place of business, regular turnover of
8      business, all the factors that I think people in
9      my position would be evaluating on behalf of a
10     client if I were advising them about whether or
11     not they needed to register.

Burns' report does not address either the Fusco deposition or the DeWitt declaration and exhibits.

8

Burns agreed that the DeWitt summary exhibits (spreadsheets) indicated there were short holding periods.  Although he had not mentioned DeWitt in his report, he testified that the turnover identified in the summary data presented in DeWitt's spreadsheets was consistent with high-frequency traders.

Page 103
18      Q      So if you -- assuming that Mr.
19      DeWitt's spreadsheets regarding how quickly he
20      turned over his shares are accurate, would you
21      consider that to be short period of time?
22      MR. KATZ:    Objection.
23      THE WITNESS:        Not necessarily.  A
24      high-frequency trader might get in and out of
25      positions many, many times during a day.  As I
Page 104
1      recall, and I have a very fuzzy recollection of
2      this, but some -- he pointed to percentages where
3      holdings -- he held on to the position for seven
4      days, sometimes for 14, sometimes for 30.   I
5      might be misremembering.  But I think during
6      those periods of time, given that Mr. Almagarby
7      had exposure, he was exposed to investment risk.

It is my opinion that comparing the trading activities of high frequency traders to the trading activities of the Defendants as part of an analysis of whether the Defendants engaged in dealer activity is flawed.  The trading activities of high frequency traders are not comparable to Almagarby's trading activities. Burns described Almagarby on page 8 of his report:

"During the period in question, Mr. Almagarby was the sole owner and operator of MEG, which maintained brokerage accounts with various registered broker-dealers through which it engaged in all of its trading activity in the equity securities. The trading activity at issue in this proceeding was all done through MEG, and MEG's trading activity involving microcap equities was generally limited to sales of the equity securities

9

acquired through conversion of a debt security (i.e., MEG generally did not engage in purchases of microcap equity securities in the public market). Consequently, MEG's purchases and sales during the course of these series of transactions generally involved separate securities of the same issuer: the purchases were privately negotiated (with the assistance and opinion of counsel) and involved debt securities or convertible debt securities; however, the sales were public sales into the market of publicly- traded equity securities."

It is my experience that high frequency traders depend on their ability to get in and out of securities quickly and typically buy and sell liquid securities that are traded in efficient markets.  High frequency traders do not have to rely on Rule 144 exemptions in order to sell unregistered securities like Almagarby.  They typically do not acquire shares by "conversion of a debt security" or engage in "purchases [that] were privately negotiated[.]"

Burns seemed to agree that it was Almagarby's intention to move the shares he acquired "as quickly as possible."

> Page 104
> 16    Q    I think you've acknowledged that Mr.
> 17    Almagarby testified that he wanted to get in and
> 18    out of the shares as quickly as he could, right?
> 19    A    I think he -- that's one of the -- a
> 20    line along those lines is what he said.
> 21    Q    Assuming he said that, that would
> 22    indicate that his intention, regardless of how
> 23    long he wound up holding the shares, his
> 24    intention was to move them into the market as
> 25    quickly as possible.  Do you agree?
> Page 105
> 1    A    It sounds as if that's what he said.

## 2.      Investment Purpose

It was critical for Burns to address Defendants' investment purpose and what, if any, impact it had on his opinions.

Burns included the following quote in his report:

"The SEC has taken the position that a dealer must buy and sell, or be willing to buy and sell, contemporaneously. This approach is necessary to distinguish dealers from investors who buy and sell a security for **investment purposes**, but sometimes hold the position for only a short amount of time. The distinction between active trader and dealer can be very fine."[16]

Burns did not form an opinion whether Defendants bought and sold for investment purposes.

Page 99
24     THE WITNESS:      I -- I haven't formed an
25     opinion about whether they bought and sold for
Page 100
1      investment purposes.  His testimony suggested he
2      wanted to get in and out of the market quickly,
3      but I'm -- you know, I haven't plumbed the depths
4      of that.

Burns acknowledged that Almagarby wanted to liquidate the position quickly "so that he could have the wherewithal to go into the next investment…"

Page 100
6      Q      And the statement that you are
7      testifying about that Mr. Almagarby made about
8      wanting to get in and out quickly, that would
9      tend to suggest that he did not have investment

---

[16] Robert L.D. Colby, Lanny A. Schwartz, and Zachary J. Zweihorn, Broker-Dealer Regulation, 2d. Edition at §2.3.1.A (Practicing Law Institute, 2015) (hereinafter, "Colby").

10    purpose in your view?
11    A      Just that he wanted to liquidate the
12    position quickly.  I mean, when I think of for
13    investment purposes, he might have wished to
14    liquidate quickly so that he could have the
15    wherewithal to go into his next investment and
16    his next investment and his next investment.

Burns does not indicate in his report how he considered Almagarby's "investment purpose" in reaching his opinions that Defendants were not dealers, even though there were multiple red flags that he should have addressed:

- Extremely short-term holding periods for the stocks acquired by Defendants;
- Defendants' trading records did not identify any purchases that were executed in either the over-the-counter ("OTC") or Exchange markets;
- Defendants relied on the Rule 144 exemption to sell the shares of the thirty-seven issuers;
- Defendants purchased shares at deep discounts to the market price directly from the issuers;
- Defendants sold securities even when the prices of the shares were declining;
- Defendants purportedly paid 20% commissions to the cold-callers for identifying potential debt sellers;
- Defendants acquired and subsequently sold shares that traded well below a penny (i.e. double zero .001 and triple zero .0001);
- Defendants acquired newly issued shares of stock that were fundamentally high risk.  These companies apparently had limited financial resources because they issued huge blocks of shares at a heavily discounted prices, rather than repaying the debt;
- The dollar amount of the debt conversions was not significant -- 16 of 37 (43%) were for amounts that were less than $20,000;

Based on my review of Burns' report and the transcript of his deposition, it appears that Burns was unfamiliar with these factors; however, he should have

considered them in forming his opinions, or he should have explained why he did not use them.

Burns cannot support his opinion that Almagarby and MEG had investment purpose in the purchase and sale of stocks other than to say there was exposure to investment risk.

Page 105
2    Q    Do you have any facts or information
3    that you can relate at this time that convinced
4    you that Mr. Almagarby and MEG had investment
5    purpose in their purchase and sales of stocks?
6    A    What -- well, again, the DeWitt
7    declaration, given that it speaks to holdings --
8    his holding for 7 or 14 or 30 days meant there
9    was exposure.  Exposure meant investment risk.
10   So, you know, there's investment -- I see an
11   investment purpose there, notwithstanding what
12   he -- potential investment purpose,
13   notwithstanding what he said at one point
14   during -- in his transcript.

Burns was asked to explain why Almagarby did not conduct due diligence if he was acquiring the shares for investment purposes.  He does not refer to any information he obtained from Almagarby in his response.

15   Q    And how does -- if the -- Mr.
16   Almagarby's deposition transcript reflected that
17   he did little to no due diligence on the shares,
18   how would that affect your view of whether or not
19   he had investment purpose?
20   MR. KATZ:    Objection.
21   THE WITNESS:        There are different
22   kinds of traders who -- who can invest again for
23   reasons that aren't fundamental to the security
24   they're purchasing or selling.

13

### 3.     Underwriting Activity

In his report, Burns does not meaningfully consider whether the Defendants were engaged in underwriting activity or involved in distributing shares obtained from issuers at crucial points in the chain of distribution.  These are crucial considerations in determining whether one is engaging in dealer activity, and Burns' failure to address these factors is a major deficiency in his report.  In addition, during his deposition, Burns did not satisfactorily answer questions about determining whether someone is engaged in underwriting.

Page 125
18     Q     And your understanding, is the length
19     of the holding period of shares a relevant factor
20     in determining whether or not one is engaged in
21     underwriting?
22     A     It can be.  Again, I'm not -- I don't
23     spend as much time in the corporate side of
24     things.  I do recall Mr. Almagarby got 144
25     opinions relating to his ability to -- the shares
Page 126
1      were sufficiently aged to sell them.
2      Q     Okay. Do you know whether the volume
3      of shares sold by someone in comparison with the
4      total volume of shares sold by other persons on a
5      given day or over a given time period is relevant
6      to the inquiry as to whether or not one is
7      engaged in underwriting?
8      A     I think of that in a broad general
9      markets context when you're talking about penny
10     stocks, any kind of trading, given there is no
11     liquidity in these market, it's going to
12     constitute a significant amount of trading in any
13     particular day.

14

In my experience, determining whether persons who are engaged in the business of buying and selling securities, such as the Defendants, are involved in underwriting (whether or not they are statutory underwriters) is a crucial part of the dealer analysis. This determination requires more than just holding a finger to the wind; instead, it requires a close review and analysis of the buying-and-selling activity at issue. Strikingly absent from Burns' report was any sort of meaningful analysis or description of MEG's trading activity. Burns' failure to scrutinize MEG's trading activity may be responsible, in part, for his failure to recognize and to address key indicia of underwriting activity that is inconsistent with his opinion that Defendants were not dealers, namely:

- MEG immediately converted debt to unregistered shares;
- MEG received large quantities of shares at deeply discounted prices; and
- MEG immediately sold the unregistered shares.

My review and analysis of the Defendants' trading activity was an important basis for my opinion that Burns was wrong in concluding that the Defendants were not engaged in underwriting, and that they therefore cannot have been dealers. Below, I discuss the examples of Defendants' transactions in the shares of Aluf Holdings Inc. and Grid Petroleum Corp. to vividly illustrate that the Defendants *were* engaged in underwriting activity.

MEG's activity in the two securities discussed below follows the same basic patterns that MEG engaged in for almost all the securities throughout the trading period. In my opinion, these stark patterns of activity are indicative of underwriting. The short-term holding periods between the dates (1) MEG acquired the debt and converted the debt into unregistered shares, and (2) MEG converted the debt into unregistered shares from the issuer and sold these shares, are typical of underwriting activity. In addition, the conversion discounts MEG received are consistent with the discounts or concessions an underwriter typically receives from issuers. Burns' expert report was flawed because his report did not address these activities, did not contain any meaningful analysis of the trading patterns, and did not explain how such stark trading patterns could *not* constitute underwriting activity.

15

A.     **Aluf Holdings Inc. ("AHI")**

In analyzing MEG's purchases and sales of AHI, I determined the following: MEG purchased $75,000 of debt from debt holders in January 2016 in two transactions ($25,000 on January 7, 2016 and $50,000 on January 24, 2016).[17] On January 7, 2016 the closing Bloomberg price for AHI was $.0028 per share (i.e. 357 shares per dollar).   On January 24, 2016, the closing Bloomberg price was $.0012 per share (i.e. 833 shares per dollar).[18]

MEG converted the initial $25,000 debt amount into 58,357,142 shares by January 25, 2016, at discounts ranging from 56.25% to 83.87%.  All of these unregistered shares were sold by January 28, 2016.

MEG converted $32,000 of the $50,000 debt amount into 602,857,142 shares by May 25, 2016, at discounts ranging from 40.00% to 80.00%.  All these shares were sold by June 27, 2016.  The closing Bloomberg price on June 27, 2016 was $.0001 (i.e. 10,000 shares per dollar).

B.     **Grid Petroleum Corp ("GPC")**

In analyzing MEG's purchases and sales of GPC, I determined the following: MEG purchased $16,000 of debt from a debt holder on October 15, 2015.[19]  The closing Bloomberg price for GPC on that date was $.0060 per share (i.e. 167 shares per dollar).  The first conversion occurred a week later on October 22, 2015 when the closing Bloomberg price was $.0019 per share (i.e. 526 shares per dollar).

MEG converted the initial $16,000 debt amount (plus an additional $5,033 amount that was added on November 4, 2015) into 300,860,000 shares by April 12, 2016, at discounts ranging from 50.00% to 75.00%.[20]  All 300,860,000 GPC

---

[17] See Summary Exhibit 3.1

[18] The debt purchase date was a Sunday.  Therefore, I used the closing price for the previous Friday.
[19] See Summary Exhibit 3.2

[20] I did not find any document that explained why the initial debt amount increased.

16

shares were sold by April 27, 2016.  The closing Bloomberg price on April 27, 2015 was $.0002 (i.e. 5,000 shares per dollar).

The rapid turnover of the shares by the Defendants, the substantial discounts obtained by them, the minuscule value of the shares – which appears to have trended downward as the Defendants flooded the market with the shares – and the enormous number of shares bought from the issuers by the Defendants and sold into the public market are all indicative of underwriting and dealer activity.  Burns' ignoring or glossing over these stark facts was a significant shortcoming and raises questions about the extent to which he understood the facts and whether the facts mattered to him in his formulation of his opinions.

## VI.   Conclusion

In his report, Burns opined that the Defendants did not fall within the definition of "dealer" and that the Defendants, therefore, need not have registered as "dealers" with the SEC.  Burns' report, however, suffers from a number of serious shortcomings and his conclusion is unsupported.  Statements by Burns during his deposition in this case further undermined the soundness of his opinions.

Burns conceded in his report and at his deposition that his opinions were largely based on reviewing the allegations in the complaint, reading the deposition transcript of Almagarby, and spending a half hour speaking to Almagarby without any serious attempt to determine whether his conduct constituted dealer activity.

Having spent little or no time reviewing and analyzing the Defendants' conduct—particularly their trading patterns—Burns was incapable of rendering a reliable opinion about whether the Defendants fell within the definition of "dealers."  Burns did not adequately address the short holding periods of the billions of shares of extremely low-value shares that the Defendants obtained from issuers and promptly sold into the public markets.  His erroneous conclusion that the Defendants were not "dealers" appears to have been the result of taking an unduly narrow view and purposefully avoiding exposing himself to all of the pertinent facts.

Burns' consideration of "investment purpose" was absent from his report (except to quote from a scholarly treatise stating that "investment purpose" *was* an attribute of an ordinary "trader").  When asked about "investment purpose" at his deposition, Burns' response was inadequate:  "investment risk" and "investment purpose" obviously cannot be equated, but that is precisely what he attempted to do.  Almagarby essentially admitted to being a stock "flipper" who relied on deep discounts from the issuers for his profits.  Burns' remarkable struggle to portray Almagarby as having "investment purpose"—even though Almagarby all but disavowed such purpose—undermines his opinions.

Finally, Burns' failure to consider whether the Defendants were engaged in underwriting activity or involved in distributing shares obtained from issuers at crucial points in the chain of distribution constituted a significant flaw in his report in view of the importance of these factors in any fulsome consideration of the dealer issue.  Burns' responses to inquiries on these subjects during his deposition were, in my opinion, uninformed and inadequate.

As set forth in my report, my review and analysis of the facts and circumstances—especially the stark and consistent trading patterns in which the Defendants engaged time after time—lead me to the well-founded conclusion that the Defendants were engaged in the business of purchasing and selling securities in a manner that was consistent with "dealer" activity and that they were not so-called ordinary "traders."

November 2, 2019

Robert W. Lowry

Robert W. Lowry

18

# EXHIBIT 1

RL Consulting Services, Inc
19228 Charandy Drive
Leesburg, VA 20175

# R o b e r t  W.  L o w r y

703-737-3167 (office)
703-623-3932 (mobile)

## Qualifications Summary

Thorough knowledge of the federal securities laws and regulations, accounting practices, capital formation, and the customs and practices of the securities industry.  Proficient in examining and investigating broker dealer activities and investment advisers; inspecting the activities of Self Regulatory Organizations; making effective oral and written presentations; analyzing complex financial records and transactions; conducting internet research; investigating illegal broker dealer activities; analyzing and calculating markups and markdowns; and using a personal computer to prepare detailed trading schedules and other exhibits.

## Employment History

**RL Consulting Services Inc.**
**President    •    May 1996 to Present**

- Since May 1996, I have been president of RL Consulting Services, Inc, which is located  outside of Washington DC in Leesburg, VA.

- I have more than 44 years of experience in the securities industry – including the 23 years when I worked for the Securities and Exchange Commission in the Division of Market Regulation.  While working at the SEC, I was responsible for conducting **regulatory examinations** and participating in **enforcement investigations**.

- My SEC work experience has provided me with the knowledge, training and experience for understanding how broker dealers must comply with securities laws and regulations.  My clients have included public companies, public investors, broker dealers, investment advisers, state and federal (SEC) regulatory agencies

and the Department of Justice.

- I have been qualified in court and arbitration hearings for cases involving best execution, market manipulation, supervision of broker dealers and investment advisers, sales practices, suitability, churning, damages, clearing firm liability and selling away.

- I have been retained in over 800 matters ranging from securities arbitration, state and federal regulatory proceedings, state and federal criminal and civil court proceedings, as well as compliance related audits for broker dealers and investment advisers.

- I have appeared in federal court (criminal and civil) on more than 50 occasions since 1996 and qualified to offer opinions as an expert in market manipulation, suitability, churning, supervision and insider trading.

- I have published articles which addressed the subjects of supervision and best execution for the Practicing Law Institute and the Public Investors Arbitration Bar Association, and have appeared on Bloomberg Television.  He is recognized as an expert in the field of federal securities laws and regulations, accounting practices, capital formation and the customs and practices of the securities industry.

**Prudential Insurance Company of America, Newark, NJ**
**Director, Corporate Compliance Dept   •    May 1995 to  May 1996**

- I was responsible for assessing securities compliance of Prudential's largest broker dealer, Pruco Securities Corporation.

- I evaluated the adequacy of the supervisory system, branch office inspection program, training initiatives and compliance with Prudential's written supervisory procedures.

- I recommended and implemented appropriate corrective action when needed.

**R O B E R T   W.   L O W R Y            •                 P A G E   2**

- I conducted sensitive investigations and branch office inspections to identify systemic weaknesses in the compliance structure and to respond to regulatory inquiries.

**Securities and Exchange Commission, Washington, DC**
**Senior Accountant, Market Regulation • January 1972  to  May 1995**

- I evaluated the SEC's broker dealer examination program and the SEC inspections of self-regulatory organizations (NASD, NYSE, and AMEX).

- I conducted more than 250 broker-dealer examinations, inspected the activities of self-regulatory organizations ("SROs").

- I analyzed complex financial records and securities transactions, made detailed written and oral reports of findings, and prepared damage calculations to support my report findings.

- I maintained routine contact with SEC regional office personnel to recommend broker dealer examination priorities and resolve examination issues, and advised staff on complex regulatory matters.

- I consulted with the Division of Enforcement and the Office of General Counsel on markup cases considered by the Commission.

- I worked with the Division of Enforcement on investigations and litigation matters – which included taking testimony, analyzing trading data, preparing schedules and analyzing complex securities transactions.

- I testified on behalf of the SEC in federal court on three occasions (SEC v. First Jersey Securities, SEC v. Thomas James and U.S. v. Eric Wynn).  I was qualified at trial as an expert in markups, over-the-counter trading and damages.

## Education

University of Maryland, College Park, MD,
B. A. Business Administration, 1976

## Publications

- The Elements of Best Execution,
  Practicing Law Institute, 2001

- How "Red Flags" May Prove Supervision Cases,
  Public Investors Arbitration Bar Association, 2002

- Selling Away in a Supervised Environment,
  Public Investors Arbitration Bar Association, 2004

- Representing Claimants in Broker Theft Cases,
  Public Investors Bar Association, 2010

# EXHIBIT 2

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 2002 | Alpha Capital v. Group Management | USDC SDNY 1:02-cv-2219 (LBS) | Defendant | Market Manipulation | Declaration |
| 2012 | Anchor Bank v. Hofer | USDC WDWI 3:09-cv-00610 | Defendant | Market Manipulation | Expert Report, Deposition |
| 2012 | Barbachano v. Standard Chartered | USDC SDNY 1:11-cv-03553 | Plaintiff | Suitability | Expert Report |
| 2013 | Barbachano v. Standard Chartered | USDC SDNY 1:11-cv-03553 | Plaintiff | Suitability | Deposition |
| 1998 | Bishop v. Merrill Lynch | USDC Birmingham AL | Plaintiff | Supervision | Deposition |
| 2002 | Black v. Finantra | USDC SDNY 1:01-cv-76819 (JSR) | Plaintiff | Market Manipulation | Trial Testimony |
| 1998 | BNP v. American Entertainment Group | USDC Bankruptcy, Baltimore, MD | Plaintiff | Market Manipulation | Trial Testimony |
| 2003 | Boland v. A. G. Edwards | USDC SDIL  3:01-cv-00176 (GBC) | Plaintiff | Rule 144 | Trial Testimony, Expert Report |
| 2018 | Caldwell v. Vantage Benefits | USDC 3:17-cv-3459 | Plaintiff | Damages | Expert Report |
| 2000 | Corsair v. Wedbush | USDC LA 8:99-cv-00470 AHS | Defendant | Market Manipulation | Trial Testimony |
| 2006 | Fortunet, Inc. v. Melange Computer Services | USDC, District of NV 2:04-cv-01448 (PMP) | Plaintiff | Disclosure | Expert Report |
| 1999 | Grider v. Merrill Lynch | USDC Birmingham AL | Plaintiff | Supervision | Deposition |
| 2000 | Hemispherx Biopharma v. Asensio & Co | USDC Philadelphia, PA | Plaintiff | Short Selling | Expert Report |
| 2005 | In the Matter of Genesis Intermedia | USDC District of MN 03-cv-03471 (AJB) | Plaintiff | Supervision | Expert Report, Deposition |
| 2014 | Last Atlantis v. AGS Specialist Partners | USDC NDIL1:04-cv-00397 | Plaintiff | Best Execution | Expert Report, Deposition |
| 2009 | Last Atlantis v. AGS Specialist Partners | USDC NDIL 1:04-cv-00397 | Plaintiff | Option Order Handling | Expert Report Deposition |
| 2009 | Levitt v. Bear Stearns | USDC SDNY 1:99-cv-02789 (MDL) | Plaintiff | Clearing Firm Liability | Expert Report, Deposition |
| 2016 | Millman v. Questar Capital | USDC District of MD 1:15-cv-00894 | Plaintiff | Suitability, Supervision | Expert Report |
| 1998 | Mishkin v. Ensminger et al | USDC SDNY 1:97-bk-08423 | Defendant | Clearing Firm Liability | Trial Testimony, Expert Report |
| 2009 | O'Riordan v. US Trust | USDC EDVA 1:09-cv-00753 (LO) | Plaintiff | Suitability, Prudent Investor Rule | Deposition, Expert Report |
| 2010 | Premier v. Bank of America | USDC District of AZ 09-cv-02265-(PHX) (FJM) | Defendant | Market Manipulation | Expert Report |
| 2008 | SEC v. Absolutefuture.com | USDC SDNY 1:01-cv-09058 (DAB) | Plaintiff | Market Manipulation, Damages | Affidavit |
| 2010 | SEC v. AFTI (Geiger) | USDC District of CO 10-cv-00128 (DME) | Plaintiff | Market Manipulation | Expert Report, Declaration |
| 2017 | SEC v. American Growth Funding | USDC SDNY 1:16-cv-00828 | Claimant | Supervision | Expert Report, Deposition |
| 1997 | SEC v. Andrew Pitt | USDC LA 2:96-cv-04164 (MRP) | Plaintiff | Market Manipulation | Trial Testimony, Expert Report |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|-----------|-------|---------|-----------|
| 2008 | SEC v. Berlacher | USDC EDPA 2:07-cv-03800 (MSG) | Plaintiff | Short Selling, Insider Trading, Damages | Expert Report |
| 2010 | SEC v. Big Apple Consulting USA | USDC MDFL 09-cv-01963 | Plaintiff | Due Diligence, BD Registration | Expert Report, Deposition |
| 2012 | SEC v. Big Apple Consulting USA | USDC MDFL 09-cv-01963 | Plaintiff | Due Diligence, BD Registration | Trial Testimony |
| 2007 | SEC v. Boutraille | USDC SDNY 1:05-cv- 09300 (GBD) | Plaintiff | Insider Trading, Options | Declaration, Expert Report |
| 2016 | SEC v. Caledonian Bank | USDC SDNY 1:15-cv-00894 | Plaintiff | Supervision | Expert Report |
| 2007 | SEC v. Cameron (Jessop) | USDC SDNY 1:05-cv-10115 (PAC) | Plaintiff | Market Manipulation | Expert Report |
| 2007 | SEC v. CTT | USDC District of CT 3:04-cv-01331 (JCH) | Plaintiff | Market Manipulation | Expert Report, Deposition, Testimony |
| 2017 | SEC v. Dynkowski | USDC 1:09-cv-361 (GMS) | Plaintiff | Market Manipulation | Expert Report, Deposition |
| 2006 | SEC v. Exotics | USDC District of NV 2:05-cv-00531 (PMP) | Plaintiff | Market Manipulation | Expert Report |
| 2011 | SEC v. Exotics | USDC District of NV 2:05-cv-00531 (PMP) | Plaintiff | Market Manipulation | Trial Testimony |
| 2014 | SEC v. Garber | USDC SDNY 1:12-cv-09339 | Plaintiff | Unregistered Secs | Expert Report, Deposition |
| 2006 | SEC v. Gregory Brady | USDC, NDTX 3:05-cv-01416-D (SAF) | Plaintiff | Damages | Expert Report |
| 2005 | SEC v. Investment Technology | USDC NDTX 3:03-cv-00831 (KJD) | Plaintiff | Market Manipulation | Expert Report |
| 2005 | SEC v. James Franklin | USDC SDCA 3:02-cv-00084 (DMS) | Plaintiff | Market Manipulation | Summary Witness |
| 2002 | SEC v. Jerome Rosen | USDC SDFL 1:01-cv-00369 (DMM) | Plaintiff | Market Manipulation | Trial Testimony, Expert Report |
| 2002 | SEC v. Kfir Barzilay | USDC NDIL 1:99-cv-05023 | Plaintiff | Suitability, Churning | Expert Report |
| 2006 | SEC v. Lancer Group    (Michael Lauer) | USDC SDFL 9:03-cv-80612 (KAM) | Plaintiff | Market Manipulation | Expert Report, Declaration |
| 1998 | SEC v. Leonard Greer | USDC SDNY 1:97-CV-07267 (MP) | Plaintiff | Market Manipulation | Expert Report, Deposition |
| 2009 | SEC v. Lyons | USDC SDNY 1:06-CV-14338 (SHS) | Plaintiff | Short Selling | Deposition |
| 2008 | SEC v. Lyons | USDC SDNY 1:06-CV-14338 (SHS) | Plaintiff | Short Selling, Damages | Expert Report |
| 2006 | SEC v. Moises Saba Masri | USDC, SDNY 1:04-cv-01584 (RJH) | Plaintiff | Market Manipulation | Expert Report |
| 2007 | SEC v. Packetport | USDC District of CT 3:05-cv-01747 (JCH) | Plaintiff | Market Manipulation | Expert Report |
| 2007 | SEC v. Pasternak | USDC District of NJ 1:05-cv-03905 (JAP) | Defendant | Supervision | Expert Report |
| 2010 | SEC v. Regency | USDC District of CO 09-cv-00497 (DME) | Plaintiff | Market Manipulation | Deposition (Summary Witness) |
| 2000 | SEC v. Richard Bertoli | USDC SDNY 1:85-cv-07072 (LBS) | Plaintiff | Market Manipulation | Expert Report |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 2010 | SEC v. Robert Berlacher | USDC ED PA 07-cv-03800 (ER) | Plaintiff | Insider Trading | Expert Report, Trial Testimony |
| 2000 | SEC v. Schiffer | USDC SDNY 1:97-cv-05853 (RO) | Plaintiff | Market Manipulation | Expert Report |
| 2007 | SEC v. Simmons | USDC MDFL 8:04-cv-02477 (MAP) | Plaintiff | Market Manipulation | Expert Report |
| 1999 | SEC v. Simon Rosenfeld | USDC SDNY 1:97-cv-01467 (WHP) | Plaintiff | Market Manipulation | Expert Report |
| 2002 | SEC v. US Environmental | USDC SDNY 1:94-cv-06608 (PKL) | Plaintiff | Market Manipulation | Trial Testimony, Expert Report |
| 2000 | SEC v. Vigue | USDC Portland, ME | Plaintiff | Market Manipulation | Expert Report |
| 2008 | SEC v. Wamex | USDC SDNY 1:01-cv-09058 (DAB) | Plaintiff | Market Manipulation, Damages | Affidavit |
| 2006 | SEC v. Whittemore | USDC DC 1:05-cv-00869 (RMC) | Plaintiff | Market Manipulation | Expert Report, Declaration |
| 2011 | SEC v. Williams | USDC ND of TX 3:10-cv-1068 | Plaintiff | Market Manipulation | Expert Report |
| 2005 | SEC v. Wolfson | USDC, District of Utah 2:02-cv-01086 (CW) | Plaintiff | Market Manipulation | Expert Report |
| 2007 | SEC v. Yaroshinsky | USDC SDNY 1:06-cv-02401 (CM) | Plaintiff | Insider Trading | Expert Report |
| 2009 | Stern v. Charles Schwab | USDC District of AZ 2:09-cv-01229 (DGC) | Plaintiff | Supervision, Money Laundering, Ponzi Scheme | Expert Report |
| 2006 | Telco v. Ameritrade | USDC, District of NE 8:05-cv-00387 (JFB) | Plaintiff | Best Execution | Expert Report, Deposition |
| 2002 | Transcontinental Realty v. Gotham Partners | USDC SDNY 1:01-cv-06782 (MP) | Plaintiff | Section 16B | Expert Report |
| 2003 | US v. Kelly | USDC SDFL 1:02-cr-20473 (CMA) | Plaintiff | Market Manipulation | Trial Testimony |
| 2011 | US v. Fan | USDC Western District of WA | Defendant | Damages | Declaration |
| 2005 | US v. Frank Skelly | USDC SDNY 1:02-cr-00986 (RMB) | Defendant | Damages | Expert Report |
| 2015 | US v. Fred Montano | USDC EDPA 2:13-cr-00082 | Defendant | Damages | Expert Report |
| 2011 | US v. Gushlak | USDC EDNY 1:03-cr-00833 NGG | Defendant | Damages | Expert Report |
| 2012 | US v. Gushlak | USDC EDNY 1:03-cr-00833 NGG | Defendant | Damages | Trial Testimony |
| 2000 | US v. Kensington Wells | USDC EDNY 0:99-cr-00697 LDW | Plaintiff | Market Manipulation | Trial Testimony |
| 2000 | US v. McClendon et al. | USDC NDGA 1:99-cr-00462 ODE | Plaintiff | Excessive Trading, Damages | Trial Testimony |
| 2002 | US v. Pappas | USDC SDNY 1:01-cv-01033 (DAB) | Defendant | Damages | Expert Report |
| 1999 | US v. Robert Landau | USDC SDNY 1:97-cv-05912 (SHS) | Plaintiff | Market Manipulation | Expert Report |
| 2001 | West v. Prudential Secs | USDC SDIL 3:99-cv-00567 (GPM) | Plaintiff | Market Manipulation | Expert Report |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|-----------|-------|---------|-----------|
| 2003 | Alcala v. Bear Stearns | Circuit Court, Cook County, IL | Movant | Clearing Firm Liability | Expert Report |
| 2015 | Bromwell v. Signator | Circuit Court of MD for Dorchester County | Plaintiff | Suitability | Expert Report |
| 2013 | Christiansen v. Wachovia | SC State Court | Plaintiff | Suitability, Due Diligence | Expert Report |
| 2011 | Clark v. TD Ameritrade | Circuit Court, Martin County, FL | Plaintiff | Clearing Firm Liability | Affidavit |
| 2014 | Crowe v. Entrust | Circuit Court of Cook County, IL | Plaintiff | Supervision | Expert Report, Deposition |
| 2012 | Erb v. Jonas | Circuit Court, Alexandria VA | Plaintiff | Damages | Expert Report, Deposition, Testimony |
| 2010 | Griffin v. Albers | Probate Court Dallas TX | Plaintiff | Supervision | Expert Report |
| 2015 | Hayes v. Morse Capital | Circuit Court of Rockingham County VA | Plaintiff | Supervision, Suitability | Expert Report |
| 2000 | Haymarket LLC v. D G Jewelry | NY Supreme Court | Defendant | Market Manipulation, Short Selling | Testimony |
| 2002 | Hemispherx v. Asensio | Pennsylvania Common Pleas Court | Plaintiff | Short Selling | Trial Testimony, Expert Report |
| 2007 | Hennessy v. Granite | NY Supreme Court | Defendant | Supervision | Affidavit |
| 2015 | In the Matter of Harold Wood v. Mark Lyons | District Court for Tulsa County - OK | Plaintiff | Suitability | Expert Report |
| 2016 | In the Matter of Harold Wood v. Mark Lyons | District Court for Tulsa County - OK | Claimant | Suitability | Testimony |
| 2003 | Klein v. Oppenheimer | District Court of Johnson County, KS | Plaintiff | Clearing Firm Liability | Deposition |
| 2010 | Lowengart v. Cephus Capital | Circuit Court of Jefferson Co AL 09- 903145 | Plaintiff | Suitability | Affidavit |
| 2011 | McCarty v. MetLife | Circuit Court, Randolph County, WV | Plaintiff | Suitability, Damages | Expert Report |
| 2014 | McLendon v. Chapman Hext | District Court of Dallas County, TX | Plaintiff | Suitability, Due Diligence | Expert Report, Deposition |
| 2005 | New Jersey v. Bazarte | Superior Court, Criminal Div (Flemington NJ) | Plaintiff | Conversion, Damages, Trading | Trial Testimony |
| 2012 | NPC v. Kelleher | Superior Court, Plymouth MA | Defendant | Supervision, Selling Away | Affidavit |
| 2010 | Ohanessian v. SWAT | Superior Court, Los Angeles CA | Defendant | Disclosure, Market Manipulation | Trial Testimony, Expert Report |
| 2003 | Ortega v. Paloma | Superior Court, San Diego, CA | Plaintiff | Sale of Unregistered Secs | Declaration |
| 2008 | Prousalis v. Cohen Milstein | DC Superior Court | Plaintiff | Suitability, Supervision | Expert Report, Testimony |
| 2002 | Toomey v. Deutsche Bank | Montgomery County MD Circuit Court | Plaintiff | Rule 144 | Expert Report |
| 2003 | Tucker v. Graves | Superior Court Gila County, AZ | Plaintiff | Supervision, Selling Away | Expert Report |
| 2010 | UBS v. Highland Capital | Supreme Court NY | Defendant | Supervision, Insider Trading | Expert Report, Deposition |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 1998 | Verniero v. Brennan | NJ State Court ESX-C-243-95 | Plaintiff | Market Manipulation, Markups | Expert Report |
| 2011 | Warfield v. OptionsXpress | Superior Court of the State of Arizona | Plaintiff | Supervision | Expert Report |
| 2014 | Xybernaut v. Troutman Sanders | Circuit Court of Fairfax County, VA | Plaintiff | Damages, Summary Witness | Deposition |
| 2015 | Zenker v. Sapere | Circuit Court of Albemarle Co (VA) | Plaintiff | Suitability | Expert Report |
| 2014 | SEC v. Anthony (McGinn Smith) | SEC Administrative Proceeding | Plaintiff | Due Diligence, Supervision | Expert Report, Trial Testimony |
| 2010 | SEC v. Bloomfield | SEC Administrative Proceeding | Plaintiff | Supervision | Expert Report, Trial Testimony |
| 2005 | SEC v. Initio (James Patten) | SEC Administrative Proceeding | Plaintiff | Market Manipulation | Expert Report, Testimony |
| 2015 | SEC v. Ironridge Global Partners | SEC Administration Proceeding | Plaintiff | Broker Dealer Registration, Underwriters | Expert Report |
| 1999 | SEC v. Kirk Montgomery | SEC Administrative Proceeding | Defendant | Supervision | Expert Report, Trial Testimony |
| 1996 | SEC v. Osborne Stern | SEC Administrative Proceeding | Plaintiff | Markups | Consultant |
| 2000 | SEC v. Richmark | SEC Administrative Proceeding | Plaintiff | Market Manipulation, Disclosure | Expert Report, Testimony |
| 2015 | AR v. St Bernard | Arkansas Secs Commissioner | Defendant | Suitability | Expert Report, Deposition |
| 1998 | Continuation of Dennis Milewitz | NASD Proceeding | Defendant | Supervision | Testimony |
| 2011 | DOE v. David A. Lerner Co | FINRA Enforcement | Defendant | Markups | Testimony |
| 1999 | Dynamotive Technologies | NASDAQ Proceeding | Defendant | Market Manipulation, Short Selling | Expert Report |
| 2012 | FL v. Prime Capital | State of FL, Administrative Hearings | Plaintiff | Misrepresentation, Suitability | Deposition |
| 1997 | NASD v. Int'l Trading Group | NASD Arbitration | Defendant | Markups | Testimony |
| 2006 | NASD v. Kenneth Pasternak | NASD Proceeding | Defendant | Supervision | Expert Report |
| 2001 | NASD v. Pacific Day Trading | NASD Proceeding | Defendant | Advertising | Trial Testimony |
| 2014 | Agner v. FSC | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2003 | Alderdice v. Ferris Baker Watts | NASD Arbitration | Claimant | Suitability, Churning, Supervision | Testimony |
| 2003 | Allen v. First Union | NASD Arbitration | Respondent | Supervision | Testimony |
| 2017 | Allen v. Raymond James | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2009 | Almas Temple v. M&T Secs | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2015 | Aloise v. Trident Secs | FINRA Arbitration | Claimant | Conversion, Supervision | Testimony |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 2017 | Amador v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2016 | Ames v. RBC | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2005 | Anderson Trust v. Morgan Stanley | NASD Arbitration | Claimant | Suitability | Testimony |
| 2003 | Andrews v.  Bear Stearns | NASD Arbitration | Claimant | Market Manipulation | Testimony |
| 2003 | Apprendi v.  Merrill Lynch | NYSE Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2015 | Aukofer v. Baerenz | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2009 | Azmoun v. Scott & Stringfellow | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2011 | Baker v. Merrill Lynch | FINRA Arbitration | Claimant | Suitability, Supervision, Communication with the Public | Testimony |
| 2015 | Banafsche v. Robert Baird | FINRA Arbitration | Respondent | Suitability, Supervision | Testimony |
| 2006 | Barone v. Carlin | NASD Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2017 | Barros v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2006 | Becker v. Global Crown Capital | NASD Arbitration | Respondent | Suitability | Testimony |
| 2004 | Bedford v. Morgan Stanley | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2008 | Belaid v. JMFG | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2013 | BKR v. Cantella | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2014 | Blue Bank v. HSBC | FINRA Arbitration | Claimant | Suitability | Testimony |
| 2012 | Bluegrass v. Santander | FINRA Arbitration | Claimant | Disclosure, Suitability | Testimony |
| 1998 | Boeche v. Sterling Foster | NASD Arbitration | Claimant | Market Manipulation | Testimony |
| 2012 | Boyles v. Wachovia | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2009 | Branch v. United Secs | FINRA Arbitration | Claimant | Due Diligence | Testimony |
| 2000 | Bridges v. Bear Stearns | NASD Arbitration | Claimant | Clearing Firm Liability, Market Manipulation | Testimony |
| 2005 | Brown v. Kirlin | NASD Arbitration | Claimant | Market Manipulation, | Testimony |
| 2013 | Buchanan v. Primerica | FINRA Arbitration | Claimant | Communications with Public | Testimony |
| 2005 | Buehl v. Legg Mason | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2003 | Buntemeyer v.  Investacorp | NASD Arbitration | Respondent | Supervision, Suitability | Testimony |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 2012 | Burgos v. Banco Popular | FINRA Arbitration | Claimant | Suitability | Testimony |
| 2018 | Cadilla v. Popular Securities | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2015 | Cameron Knight v. Calton | FINRA Arbitration | Claimant | Suitability, Supervision | Affidavit |
| 2002 | Castelein v. Wachovia | NASD Arbitration | Claimant | Supervision and Clearing BD Liability | Testimony |
| 2008 | Cavaliere v. Morgan Stanley | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2004 | Chang v. Citigroup | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2012 | Chickillo v. Raymond James | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2007 | Circle T v. Banc of America | NYSE Arbitration | Respondent | Supervision, Prime Brokerage | Testimony |
| 2010 | Citron v. BBVA | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2002 | Cohen v. Fereydouni | NASD Arbitration | Respondent | Suitability | Testimony |
| 2010 | Colcolough v. UBS | FINRA Arbitration | Claimant | Suitability | Testimony |
| 2017 | Conway v. JoycePayne | AAA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2014 | Cook v. Crown Capital | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2006 | Cooper v. Bear Stearns et al. | NASD Arbitration | Claimant | Supervision | Testimony |
| 2012 | Couturier v. Merrill Lynch | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2002 | Crosby v. Hampton Porter | NASD Arbitration | Claimant | Suitability, Supervision and Clearing firm liability | Testimony |
| 2017 | Cummings v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2009 | Cusack v. Schwab | FINRA Arbitration | Claimant | Suitability | Testimony |
| 2002 | Daugherty v. Washington Square | NASD Arbitration | Respondent | Supervision, Selling Away | Testimony |
| 2007 | Deering v. Gunn Allen | NASD Arbitration | Claimant | Churning | Testimony |
| 2013 | Dickau v. Morgan Stanley | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2014 | Dickson v. Golden Beneficial | FINRA Arbitration | Claimant | Suitability, Supervision, Selling Away | Testimony |
| 2004 | DiRusso v. Merrill Lynch | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2004 | DLJ v. Schrock | NASD Arbitration | Respondent | Sale of Restricted Secs | Testimony |
| 2018 | EFCO v. C L King | FINRA Arbitration | Claimant | Supervision | Testimony |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 2016 | Ehrenspeck v. Lightspeed | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2010 | Eisenstein v. H Beck | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2006 | Engel v. Ladenburg | NASD Arbitration | Respondent | Suitability, Supervision | Testimony |
| 2004 | ESCAM v. Morgan Stanley | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2003 | Fagan v. Prudential | NASD Arbitration | Claimant | Best Execution, Supervision | Testimony |
| 1998 | Faxon v. Dean Witter | NASD Arbitration | Claimant | Suitability | Testimony |
| 2016 | Fernandez v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2016 | Fernandez v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 1998 | Fiero v. Waldron | NASD Arbitration | Respondent | Market Manipulation, Short Selling | Testimony |
| 2001 | Fliegel v. Schwab | NASD Arbitration | Respondent | Best Execution | Testimony |
| 2001 | Fontana v Washington Square | NASD Arbitration | Respondent | Supervision, Selling Away | Testimony |
| 1998 | Francois v. Dallas Research & Trading | NASD Arbitration | Claimant | Market Manipulation | Testimony |
| 1998 | Franklin v. Morgan Keegan | NASD Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 1998 | Gammon v. PaineWebber | NASD Arbitration | Claimant | Misrepresentation | Testimony |
| 2015 | Geiersbach v. Ameriprise | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2004 | Gililland v. Financial West | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2008 | Gilman v. Morgan Keegan | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2000 | Gisler v. Josephthal | NASD Arbitration | Respondent | Suitability | Testimony |
| 2015 | Glenny White v. Ameriprise | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2009 | Glonti v. RBC Dain | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2018 | Gnocchi v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2004 | Gontram v. Salomon Smith Barney | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2016 | Gorguze v. C. L. King | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2012 | Grace v. Brookville | FINRA Arbitration | Claimant | Suitability, Damages | Testimony |
| 2009 | Grasso v. Merrill Lynch | FINRA Arbitration | Claimant | Supervision | Testimony |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 1998 | Greenberg v. Bear Stearns | NASD Arbitration | Claimant | Clearing Firm Liability | Testimony |
| 2016 | Greene v. Merrill Lynch | FINRA Arbitration | Claimant | Suitability, Supervision | Affidavit |
| 2002 | Grivas v. Bluestone | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2002 | Hardy v. Walsh Manning | NASD Arbitration | Respondent | Market Manipulation, Suitability | Testimony |
| 2015 | Hayes v. Crawford | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2010 | Hellyer v. Citigroup | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2006 | Henley v. Walnut Street Secs | NASD Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2017 | Hernandez v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2014 | Hillcrest Children's Center | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2013 | HITE v. SMH | FINRA Arbitration | Claimant | Short Selling, Conversion, Misrepresentation | Testimony |
| 2011 | Hix v. ProEquities | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2015 | Hobby v. Wells Fargo | FINRA Arbitration | Claimant | Suitability | Testimony |
| 2007 | Honea v. Raymond James | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2010 | Hungerford v. Johnston Lemon | FINRA Arbitration | Claimant | Unauthorized Trading | Testimony |
| 2007 | IFG v. UBS | NASD Arbitration | Claimant | Supervision, Record Keeping | Testimony |
| 2002 | Infantolino v. AG Edwards | NYSE Arbitration | Claimant | Suitability, Churning, Supervision | Testimony |
| 2009 | Interactive v. Petra | FINRA Arbitration | Respondent | Best Execution, Payment for Order Flow | Testimony |
| 2005 | Jacobs v. Salomon Smith Barney | NASD Arbitration | Claimant | Suitability | Testimony |
| 2008 | Jamous v. Wachovia | FINRA Arbitration | Claimant | Supervision (Commodities) | Testimony |
| 2006 | Kaltenbacher v. Morgan Keegan | NASD Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2004 | Keilly v. Sands Brothers | NASD Arbitration | Claimant | Suitability, Supervision, Churning, Unauthorized Trading | Testimony |
| 2005 | Kennedy v. Merrill Lynch | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2014 | Kerr v. John Thomas Financial | FINRA Arbitration | Claimant | Suitability, Churning, Supervision | Testimony |
| 2002 | Kessler v.  Edward D.  Jones | NASD Arbitration | Claimant | Conversion, Supervision | Testimony |
| 2003 | Kessler v.  Lehman | AAA Arbitration | Claimant | Best Execution, Clearing Broker Dealers | Testimony |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 2010 | Kilbane v. Ferris Baker Watts | FINRA Arbitration | Claimant | Suitability | Testimony |
| 2008 | Kirk v. TD Waterhouse | FINRA Arbitration | Claimant | Best Execution, Supervision | Testimony |
| 2008 | Klaas v. Charles Schwab | FINRA Arbitration | Claimant | Conversion, Supervision | Testimony |
| 2005 | Kouzmanoff v. Ameritrade | NASD Arbitration | Claimant | Supervision | Testimony |
| 2004 | Kurth v. Robert Baird Secs | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2013 | Kury v. Santander Secs | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2010 | LaCava v. UBS | FINRA Arbitration | Claimant | Form U-5 | Testimony |
| 2006 | Lambert v. A G Edwards | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2013 | Lamoreaux v. MMS | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2009 | Lanfear v. GCC | FINRA Arbitration | Respondent | Excessive Trading | Testimony |
| 2015 | Lang v. Prime Solutions | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2010 | Lang v. Wachovia | FINRA Arbitration | Claimant | Suitability | Testimony |
| 2000 | Larisey v. Schwab | NASD Arbitration | Claimant | Best Execution | Testimony |
| 2011 | Lehner v. Alphine Secs | FINRA Arbitration | Claimant | Best Execution | Testimony |
| 2007 | Lewis v. UBS | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2011 | Lieberman v. Morgan Keegan | FINRA Arbitration | Claimant | Due Diligence | Testimony, Expert Report |
| 2018 | Livengood v. Wells Fargo | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2003 | Loud v. Schild | NASD Arbitration | Respondent | Supervision | Testimony |
| 2006 | Lyons v. Merrill Lynch | NASD Arbitration | Claimant | Supervision, Research Analyst Disclosure | Testimony |
| 2011 | Madhok v. Charles Schwab | FINRA Arbitration | Claimant | Communications with Public, Misrepresentation | Testimony |
| 2003 | Maltz v. Morgan Stanley | NYSE Arbitration | Claimant | Suitability | Testimony |
| 2009 | Mandell v. Fidelity | FINRA Arbitration | Claimant | Supervision | Testimony |
| 1998 | Margulis v. Duke Secs | NASD Arbitration | Claimant | Market Manipulation | Testimony |
| 2003 | Maxwell v. H&R Block | NASD Arbitration | Claimant | Suitability, Mark ups | Testimony |
| 2014 | McCaskill v. Raymond James Financial | FINRA Arbitration | Claimant | Form U-5 | Testimony |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 2003 | McLeod v. Josephthal | NASD Arbitration | Claimant | Suitability, Churning, Supervision, Unauthorized Trading | Testimony |
| 2005 | Meier v. Scott & Stringfellow | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2011 | Mekelburg v. Pro Equities | FINRA Arbitration | Plaintiff | Supervision, Selling Away | Testimony |
| 2016 | Merced v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2002 | Merrill Lynch v. Berry | NASD Arbitration | Respondent | Form U-4 and U-5 Reporting Obligations | Testimony |
| 2012 | Merrill Lynch v. Horvath | FINRA Arbitration | Respondent | Short Selling, Supervision | Testimony |
| 2012 | Mirabelli v. Merrill Lynch | FINRA Arbitration | Claimant | Suitability, Supervision, Communication with the Public | Testimony |
| 2009 | Move Inc v. Citigroup Management | FINRA Arbitration | Claimant | Auction Rate Secs | Testimony |
| 2008 | Murphy v. James Patten | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 1998 | Nahass v. Sterling Foster | NASD Arbitration | Claimant | Market Manipulation | Testimony |
| 2007 | Nee v. Banc of America | FINRA Arbitration | Claimant | Form U-5 | Testimony |
| 2002 | Nicklos v. Washington Square | NASD Arbitration | Respondent | Supervision, Selling Away | Testimony |
| 2008 | Nigohosian v. TD Waterhouse | FINRA Arbitration | Claimant | Best Execution, Supervision | Testimony |
| 2007 | Nigohsian v. Merrill Lynch | FINRA Arbitration | Claimant | Best Execution, Supervision | Testimony |
| 2017 | Nobilis v. COR Clearing | FINRA Arbitration | Claimant | Conversion, Supervision | Testimony |
| 2014 | Ontonimo v. BNP Paribas Secs | FINRA Arbitration | Claimant | Suitability, Supervision, Communication with the Public | Testimony |
| 2009 | Orlando v. Citigroup | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2011 | Othello v. Penson | FINRA Arbitration | Claimant | Market Manipulation, Best Execution | Testimony |
| 2007 | Pankey v. UBS | NASD Arbitration | Claimant | Form U-5, Termination for Cause | Testimony |
| 2002 | Park v. Prudential | NASD Arbitration | Claimant | Suitability | Testimony |
| 2017 | Patterson v. Ladenburg | FINRA Arbitration | Claimant | Excessive Trading | Testimony |
| 2002 | Pelosi v. Bank of America | Pacific Stock Exchange Arbitration | Claimant | Suitability | Testimony |
| 2017 | Pesante v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2012 | Pitch v. Oppenheimer | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2003 | Quinn v.  Merrill Lynch | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 2005 | Raitport v. Salomon Smith Barney | NASD Arbitration | Claimant | Supervision | Testimony |
| 2011 | Ramirez v. Morgan Keegan | FINRA Arbitration | Claimant | Due Diligence, Supervision | Testimony, Expert Report |
| 2011 | Reddy v. Ogilvie | FINRA Arbitration | Claimant | Supervision | Testimony |
| 2004 | Richards v. Morgan Stanley | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 1999 | Robins v. Monroe Parker | NASD Arbitration | Claimant | Market Manipulation | Testimony |
| 2013 | Rodriguez v. BBVA | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2014 | Rodriguez v. RBC | FINRA Arbitration | Claimant | Disclosure | Testimony |
| 2017 | Rodriguez v. UBS-PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2010 | Rose v. AXA | FINRA Arbitration | Claimant | Suitability | Testimony |
| 1999 | Rowley v. Harriman Group Inc | NASD Arbitration | Claimant | Market Manipulation | Testimony |
| 2012 | Ruiz v. Revoal | FINRA Arbitration | Respondent | Supervision | Testimony |
| 2011 | Runge v. Citigroup | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2002 | Russell v. Prudential | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2003 | Schmalz v. Ladenburg Capital Management | NASD Arbitration | Claimant | Suitability, Churning, Unauthorized Trading, Supervision | Testimony |
| 2010 | Schneider v. Frank Rutan | FINRA Arbitration | Claimant | Suitability, Structured Products | Testimony |
| 2003 | Schulz v. Secs America | NASD Arbitration | Respondent | Supervision | Testimony |
| 2003 | Schwartz v. JP Morgan Secs | NASD Arbitration | Claimant | Suitability, Churning, Supervision, Unauthorized Trading | Testimony |
| 2014 | Sciscoe v. FSC Secs | FINRA Arbitration | Claimant | Suitability, Disclosure | Testimony |
| 2017 | Sexton v. Grimes | FINRA Arbitration | Respondent | Market Manipulation | Testimony |
| 2007 | Shami v. Dain Rauscher | NASD Arbitration | Claimant | Supervision | Affidavit, Declaration |
| 2017 | Shaw v. Roosevelt & Cross | FINRA Arbitration | Respondent | Suitability, Supervision | Testimony |
| 2003 | Shiry v. Painewebber | NASD Arbitration | Claimant | Suitability | Testimony |
| 2009 | Shore v. Citigroup | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2007 | Shore v. Dain Rauscher | NASD Arbitration | Claimant | Supervision | Affidavit, Declaration |
| 1998 | Short v. Sterling Foster et al. | NASD Arbitration | Claimant | Market Manipulation | Testimony |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|------------|-------|---------|------------|
| 2005 | Silberman v. Salomon Smith Barney | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2010 | Sleight v. Centaurus | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2002 | Smith v. Gaines Berland | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2013 | Smith v. Primerica | FINRA Arbitration | Claimant | Communications with Public | Testimony |
| 2017 | Staub v. Morgan Stanley | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2000 | Stein v. Josephthal | NASD Arbitration | Defendant | Supervision, Selling Away | Testimony |
| 2000 | Stewart v. Keogler Morgan | NASD Arbitration | Claimant | Compensation | Testimony |
| 2017 | Struble v. Raymond James | FINRA Arbitration | Claimant | Suitability, Supervision | Affidavit |
| 2004 | Taylor Trust v. Merrill Lynch | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2013 | Thistle v. EKN | FINRA Arbitration | Claimant | Suitability, Excessive Trading | Testimony |
| 2000 | Torsiello v. Sterling Foster | NASD Arbitration | Claimant | Clearing Firm Liability, Market Manipulation | Testimony |
| 2011 | Treichel v. Charles Schwab | FINRA Arbitration | Claimant | Misrepresentation, Communications with Public | Testimony, Affidavit |
| 2014 | Troutman v. Joseph Gunnar | FINRA Arbitration | Claimant | Suitability, Churning, Supervision | Testimony |
| 2005 | Tunis v. Salomon Smith Barney | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2014 | Urso v. Commonwealth Financial | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2005 | Van Pelt v. UBS | NASD Arbitration | Claimant | Market Manipulation, Form U-5 Disclosures | Testimony |
| 2013 | VCG Special Opportunities v. CGMI | FINRA Arbitration | Claimant | Suitability | Testimony |
| 2001 | Vellone v. First Union | AAA Arbitration | Claimant | Conversion, Supervision | Testimony |
| 2016 | Vizcarrondo v. UBS PR | FINRA Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2011 | Vollstedt v. Charles Schwab | FINRA Arbitration | Claimant | Communications with Public, Misrepresentation | Testimony |
| 2011 | Watts v. Charles Schwab | FINRA Arbitration | Claimant | Communications with Public, Misrepresentation | Testimony |
| 2015 | Westmoreland v. FSC | FINRA Arbitration | Claimant | Supervision, Selling Away | Testimony |
| 2012 | Wilton v. Wachovia | FINRA Arbitration | Claimant | Suitability | Testimony |
| 2004 | Wissner v. Fin Atlantic | NASD Arbitration | Claimant | Suitability, Supervision | Testimony |
| 2000 | Wright v. May & Co. | NASD Arbitration | Claimant | Suitability | Testimony |

List of Cases - 3/27/2018

| Year | Case Name | Proceeding | Party | Subject | Appearance |
|------|-----------|-----------|-------|---------|------------|
| 2011 | Young v. Deutsche Bank | FINRA Arbitration | Claimant | Communications with Public, Misrepresentation | Testimony |

# SUMMARY EXHIBIT 1.0

# Summary of MEG Acquisitions and Sales

Summary Exhibit 1

| Issuer | First Debt Purchase | Debt Purchase Amount | Toal Shares Deposited | Total Shares Sold | First Sale Date | Last Sale Date | Sale Proceeds |
|---|---|---|---|---|---|---|---|
| ALUF HOLDINGS INC | 01/07/16 | $75,000 | 704,064,284 | 572,465,284 | 01/13/16 | 06/27/16 | $141,425 |
| AXXESS PHARMA INC | 07/28/16 | $10,000 | 0 | 0 | | | $0 |
| BULOVA TECHNOLOGY | 07/09/16 | $25,000 | 4,700,000 | 4,700,000 | 07/28/16 | 07/29/16 | $15,334 |
| CD INT'L ENTERPRISES INC | 04/15/16 | $25,000 | 111,863,635 | 111,863,635 | 04/27/16 | 05/16/16 | $53,496 |
| DANIELS CORP ADVISORY | 12/07/15 | $45,000 | 92,476,601 | 92,476,601 | 12/16/15 | 01/06/16 | $106,046 |
| DEWMAR INT'L BMC INC | 12/10/13 | $17,500 | 52,857,142 | 52,857,142 | 02/19/14 | 11/18/14 | $396,418 |
| EAST COAST DIVERSIFIED | 03/27/14 | $25,000 | 500,000,000 | 500,000,000 | 04/24/14 | 06/11/14 | $49,250 |
| ELRAY RES INC | 02/24/15 | $20,000 | 25,000,000 | 172,600 | 12/04/15 | 12/04/15 | $1,087 |
| ENERGY REVENUE AMERICA INC [1] | 08/18/14 | $1,000 | 22,000,000 | 22,000,000 | 05/19/14 | 05/31/16 | $29,000 |
| EYES ON THE GO INC | 02/28/14 | $14,676 | 36,690,000 | 36,690,000 | 04/14/14 | 04/15/14 | $64,877 |
| GOLD & SILVER MINING OF NEVADA INC | 06/04/15 | $69,841 | 598,758,680 | 598,758,680 | 06/16/15 | 11/25/15 | $31,445 |
| GOLD AND GEMSTONE MINING INC | 10/30/14 | $11,000 | 161,300,000 | 161,300,000 | 12/03/14 | 04/24/15 | $144,416 |
| GREEN ENERGY ENTERPRISES / QUASAR | 10/17/14 | $40,000 | 385,527,272 | 385,527,272 | 12/19/14 | 04/08/16 | $105,462 |
| GREENFIELD FARMS FOOD INC | 08/17/15 | $6,250 | 8,330,000 | 8,330,000 | 09/04/15 | 09/04/15 | $1,641 |
| GRID PETROLEUM / SIMLATUS CORP | 10/15/15 | $16,000 | 324,560,000 | 324,560,000 | 10/28/15 | 04/27/16 | $39,438 |
| GRILLIT INC | 10/17/14 | $21,500 | 331,011,194 | 331,011,194 | 11/24/14 | 12/08/15 | $105,443 |
| HALBERD CORPORATION | 01/31/13 | $15,000 | 1,500,000 | 1,500,000 | 07/17/13 | 07/25/13 | $19,492 |
| HALITRON INC | 07/01/16 | $20,184 | 25,230,125 | 12,892,155 | 07/22/16 | 07/29/16 | $30,997 |
| HEALTHNOSTICS INC | 04/17/14 | $1,000 | 100,000,000 | 94,551,357 | 08/06/14 | 06/16/15 | $10,790 |
| HYBRID COATING TECHNOLOGIES | 07/01/15 | $32,000 | 26,820,306 | 26,820,306 | 07/15/14 | 12/07/15 | $119,906 |
| IN OVATIONS HOLDING INC | 03/07/14 | $55,000 | 367,500,000 | 367,500,000 | 04/08/14 | 04/10/15 | $132,393 |
| INDO GLOBAL EXCHANGE(S) | 10/29/15 | $18,049 | 115,000,000 | 115,000,000 | 10/19/15 | 12/23/15 | $47,334 |
| INOLIFE TECHNOLOGIES INC | 02/12/14 | $20,000 | 136,500,000 | 136,500,000 | 12/23/14 | 04/10/15 | $13,356 |
| INTERNETARRAY INC | 06/16/14 | $6,000 | 975,000,000 | 423,623,198 | 04/16/14 | 12/05/14 | $86,840 |
| LAS VEGAS RAILWAYS | 11/24/14 | $66,800 | 522,215,986 | 522,215,986 | 12/23/14 | 06/22/15 | $143,592 |
| LIG ASSETS INC | 10/23/14 | $50,000 | 298,214,285 | 298,214,285 | 11/24/14 | 06/01/15 | $93,733 |

# Summary of MEG Acquisitions and Sales

Summary Exhibit 1

| Issuer | First Debt Purchase | Debt Purchase Amount | Toal Shares Deposited | Total Shares Sold | First Sale Date | Last Sale Date | Sale Proceeds |
|---|---|---|---|---|---|---|---|
| MEDICAL CARE TECHNOLOGIES | 01/23/14 | $9,282 | 102,864,000 | 102,864,000 | 05/08/14 | 06/27/14 | $24,484 |
| MINING GLOBAL INC | 07/02/14 | $14,000 | 280,000,000 | 280,000,000 | 08/15/14 | 08/15/14 | $28,000 |
| MYCHECK INC [2] | 09/14/15 | $47,176 | 60,000,000 | 60,000,000 | 04/23/14 | 09/11/14 | $1,323,679 |
| NEXT GALAXY CORP | 12/22/15 | $30,000 | 72,600,000 | 72,600,000 | 12/29/15 | 01/19/16 | $40,101 |
| NORTH AMERICAN CANNABIS HOLDINGS | 03/02/16 | $15,000 | 0 | 0 | | | |
| PM&E INC | 02/02/15 | $12,500 | 0 | 0 | | | |
| POTNETWORK HOLDINGS INC | 07/31/15 | $25,000 | 301,000,000 | 301,000,000 | 09/09/15 | 05/04/16 | $47,287 |
| PPJ HEALTHCARE ENTERPRISES | 01/22/14 | $155,255 | 1,041,721,620 | 967,701,041 | 03/26/14 | 02/19/16 | $315,183 |
| SANOMEDICS INT'L HOLDINGS INC | 10/28/15 | $60,000 | 81,700,016 | 81,700,016 | 11/03/15 | 04/07/16 | $59,719 |
| SEVEN ARTS ENTERTAINMENT INC | 10/28/14 | $15,000 | 300,000,000 | 300,000,000 | 05/15/15 | 05/19/15 | $63,843 |
| URBAN AG CORP | 11/04/13 | $25,000 | 247,000,000 | 247,000,000 | 11/18/13 | 01/13/14 | $63,283 |
| TOTALS | | $1,115,013 | 8,414,005,146 | 7,614,394,752 | | | $3,885,508 |

[1] MEG's proceeds from the sale of 22 million ERAO shares totaled approximately $29,000

[2] MEG wired $1 million to GreenPay LLC  for the purchase 60 Million shares - $450,000 on 6/5/2014 and $550,000 on 7/22/2014

# SUMMARY EXHIBIT 2.0

**MEG Transactions and Days Held Detail**

Summary Exhibit 2.0

| Date | Issuer | Ticker Symbol | (1) Debt Purchase Date | Debt Purchase Amount | Bloomberg Closing Price | (2) Deposit Date | (3) Quantity Deposited | Days Held (2) - (1) | Quantity Sold | Date First Sale | (4) Date Last Sale | Days Held (4) - (3) | Total Days Held |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/7/2016 | ALUF HOLDINGS INC | AHIX | 1/7/2016 | $25,000 | $0.0028 | 1/13/2016 | 14,500,000 | 7 | 14,500,000 | 1/13/2016 | 1/14/2016 | 2 | 9 |
| 1/15/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0010 | 1/15/2016 | 16,000,000 | | 16,000,000 | 1/15/2016 | 1/15/2016 | 1 | 1 |
| 1/19/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0008 | 1/19/2016 | 13,928,571 | | 13,928,571 | 1/19/2016 | 1/20/2016 | 2 | 2 |
| 1/21/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0010 | 1/21/2016 | 6,857,142 | | 6,857,142 | 1/21/2016 | 1/21/2016 | 1 | 1 |
| 1/24/2016 | ALUF HOLDINGS INC | AHIX | 1/24/2016 | $50,000 | $0.0000 | 1/26/2016 | 13,928,571 | 3 | 13,928,571 | 1/26/2016 | 1/28/2016 | 3 | 6 |
| 2/2/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0005 | 2/2/2016 | 17,857,142 | | 17,857,142 | 2/2/2016 | 2/2/2016 | 1 | 1 |
| 2/5/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0004 | 2/5/2016 | 13,392,858 | | 11,538,000 | 2/10/2016 | 2/11/2016 | 7 | 7 |
| 2/12/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0002 | 2/12/2016 | 45,000,000 | | 46,854,858 | 2/12/2016 | 2/16/2016 | 5 | 5 |
| 2/17/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0003 | 2/17/2016 | 22,600,000 | | 22,600,000 | 2/22/2016 | 2/24/2016 | 8 | 8 |
| 3/1/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0001 | 3/1/2016 | 60,000,000 | | 60,000,000 | 3/3/2016 | 3/9/2016 | 9 | 9 |
| 3/21/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0002 | 3/21/2016 | 90,000,000 | | 90,000,000 | 3/21/2016 | 3/30/2016 | 10 | 10 |
| 4/5/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0002 | 4/5/2016 | 90,000,000 | | 90,000,000 | 4/5/2016 | 4/5/2016 | 1 | 1 |
| 4/21/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0001 | 4/21/2016 | 100,000,000 | | 100,000,000 | 4/21/2016 | 4/21/2016 | 1 | 1 |
| 6/2/2016 | ALUF HOLDINGS INC | AHIX | | | $0.0001 | 6/2/2016 | 200,000,000 | | 68,401,000 | 6/2/2016 | 6/27/2016 | 26 | 26 |
| 7/28/2016 | AXXESS PHARMA INC | ALST | 7/28/2016 | $10,000 | | | | | | | | | |
| 7/9/2016 | BULOVA TECHNOLO | BTGI | 7/9/2016 | $25,000 | $0.0000 | 7/9/2016 | 4,700,000 | 1 | 4,700,000 | 7/28/2016 | 7/29/2016 | 21 | 22 |
| 4/15/2016 | CD INT'L ENTERPRISES INC | CDII | 4/15/2016 | $25,000 | $0.0019 | 4/15/2016 | 111,863,635 | 1 | 111,863,635 | 4/27/2016 | 5/16/2016 | 32 | 33 |
| 12/7/2015 | DANIELS CORP ADVISORY | DCAC | 12/7/2015 | $20,000 | $0.0032 | 12/7/2015 | 31,584,545 | 1 | 31,584,545 | 12/16/2015 | 12/22/2015 | 16 | 17 |
| 12/23/2015 | DANIELS CORP ADVISORY | DCAC | 12/23/2015 | $25,000 | $0.0015 | 12/23/2015 | 60,892,056 | 1 | 60,892,056 | 12/24/2015 | 1/6/2016 | 15 | 16 |
| 12/10/2013 | DEWMAR INT'L BMC INC | DEWM | 12/10/2013 | $17,500 | $0.0002 | 1/30/2014 | 52,857,142 | 52 | 52,857,142 | 2/19/2014 | 11/18/2014 | 293 | 345 |
| 3/27/2014 | EAST COAST DIVERSIFIED | ECDC | 3/27/2014 | $25,000 | $0.0002 | 3/27/2014 | 500,000,000 | 1 | 500,000,000 | 4/24/2014 | 6/11/2014 | 77 | 78 |
| 2/24/2015 | ELRAY RES INC | ELRA | 2/24/2015 | $20,000 | $0.0003 | 2/24/2015 | 25,000,000 | 1 | 172,600 | 12/4/2015 | 12/4/2015 | 284 | 285 |
| 4/22/2014 | ENERGY REVENUE AMERICA INC | ERAO | | | $0.0711 | 4/22/2014 | 3,000,000 | | 3,000,000 | 5/19/2014 | 11/7/2014 | 200 | 200 |
| 8/18/2014 | ENERGY REVENUE AMERICA INC | ERAO | 8/18/2014 | $1,000 | | | | | | | | | |
| 1/27/2015 | ENERGY REVENUE AMERICA INC | ERAO | | | $0.0160 | 1/27/2015 | 3,000,000 | | 3,000,000 | 2/17/2015 | 5/5/2015 | 99 | 99 |
| 5/15/2015 | ENERGY REVENUE AMERICA INC | ERAO | | | $0.0126 | 5/15/2015 | 4,000,000 | | 4,000,000 | 5/18/2015 | 8/19/2015 | 97 | 97 |
| 9/8/2015 | ENERGY REVENUE AMERICA INC | ERAO | | | $0.0000 | 9/8/2015 | 5,000,000 | | 5,000,000 | 9/10/2015 | 11/6/2015 | 60 | 60 |
| 11/6/2015 | ENERGY REVENUE AMERICA INC | ERAO | | | $0.0099 | 11/6/2015 | 5,000,000 | | 5,000,000 | 11/6/2015 | 2/23/2016 | 110 | 110 |
| 4/8/2016 | ENERGY REVENUE AMERICA INC | ERAO | | | $0.0055 | 4/8/2016 | 2,000,000 | | 2,000,000 | 5/25/2016 | 5/31/2016 | 54 | 54 |

**MEG Transactions and Days Held Detail**

Summary Exhibit 2.0

| Date | Issuer | Ticker Symbol | (1) Debt Purchase Date | Debt Purchase Amount | Bloomberg Closing Price | (2) Deposit Date | (3) Quantity Deposited | Days Held (2) - (1) | Quantity Sold | Date First Sale | (4) Date Last Sale | Days Held (4) - (3) | Total Days Held |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/28/2014 | EYES ON THE GO INC | AXCG | 2/28/2014 | $14,676 | $0.0008 | 3/21/2014 | 36,690,000 | 22 | 36,690,000 | 4/14/2014 | 4/15/2014 | 26 | 48 |
| 6/4/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | 6/4/2015 | $15,000 | $0.0500 | 6/12/2015 | 10,000,000 | 9 | 10,000,000 | 6/16/2015 | 6/16/2015 | 5 | 14 |
| 6/22/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0075 | 6/22/2015 | 39,583,333 | | 39,583,333 | 6/29/2015 | 6/30/2015 | 9 | 9 |
| 7/6/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0034 | 7/6/2015 | 63,750,000 | | 63,750,000 | 7/6/2015 | 7/9/2015 | 4 | 4 |
| 7/9/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | 7/9/2015 | $19,841 | $0.0032 | 7/9/2015 | 95,690,000 | 1 | 95,690,000 | 7/15/2015 | 7/16/2015 | 8 | 9 |
| 8/12/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0037 | 8/12/2015 | 470,448 | | 470,448 | 8/13/2015 | 8/21/2015 | 10 | 10 |
| 8/19/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | 8/19/2015 | $20,000 | $0.0005 | 8/25/2015 | 2,025,316 | 7 | 2,025,316 | 8/25/2015 | 8/26/2015 | 2 | 9 |
| 9/1/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0002 | 9/1/2015 | 2,500,000 | | 2,500,000 | 9/2/2015 | 9/9/2015 | 9 | 9 |
| 9/14/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0001 | 9/14/2015 | 1,406,250 | | 1,406,250 | 9/16/2015 | 9/16/2015 | 3 | 3 |
| 9/21/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0001 | 9/21/2015 | 8,750,000 | | 8,750,000 | 9/22/2015 | 9/22/2015 | 2 | 2 |
| 9/28/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0000 | 9/28/2015 | 8,750,000 | | 8,750,000 | 9/29/2015 | 9/29/2015 | 2 | 2 |
| 10/7/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0002 | 10/7/2015 | 32,500,000 | | 32,500,000 | 10/7/2015 | 10/7/2015 | 1 | 1 |
| 10/12/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0002 | 10/12/2015 | 33,333,333 | | 33,333,333 | 10/13/2015 | 10/13/2015 | 2 | 2 |
| 10/27/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | 10/27/2015 | $15,000 | $0.0002 | 11/10/2015 | 140,000,000 | 15 | 140,000,000 | 11/10/2015 | 11/11/2015 | 2 | 17 |
| 11/17/2015 | GOLD & SILVER MINING OF NEVADA INC | CJTF | | | $0.0002 | 11/17/2015 | 160,000,000 | | 160,000,000 | 11/17/2015 | 11/25/2015 | 9 | 9 |
| 10/30/2014 | GOLD AND GEMSTONE MINING INC | GGSM | 10/30/2014 | $11,000 | $0.0010 | 11/18/2014 | 36,000,000 | 20 | 35,732,742 | 12/3/2014 | 12/4/2014 | 17 | 37 |
| 3/19/2015 | GOLD AND GEMSTONE MINING INC | GGSM | | | | 3/19/2015 | 36,000,000 | | 36,267,258 | 4/2/2015 | 4/7/2015 | 20 | 20 |
| 4/16/2015 | GOLD AND GEMSTONE MINING INC | GGSM | | | $0.0599 | 4/16/2015 | 43,500,000 | | 43,500,000 | 4/21/2015 | 4/21/2015 | 6 | 6 |
| 4/24/2015 | GOLD AND GEMSTONE MINING INC | GGSM | | | $0.0499 | 4/24/2015 | 45,800,000 | | 45,800,000 | 4/24/2015 | 4/24/2015 | 1 | 1 |
| 10/17/2014 | GREEN ENERGY  ENTERPRISES INC / QUASAR | GYOG | 10/17/2014 | $25,000 | $0.0003 | 12/19/2014 | 125,000,000 | 64 | 125,000,000 | 12/19/2014 | 12/23/2014 | 5 | 69 |
| 1/7/2015 | GREEN ENERGY  ENTERPRISES INC / QUASAR | GYOG | | | $0.0002 | 1/7/2015 | 62,500,000 | | 62,500,000 | 1/7/2015 | 1/7/2015 | 1 | 1 |
| 1/9/2015 | GREEN ENERGY  ENTERPRISES INC / QUASAR | GYOG | | | $0.0003 | 1/9/2015 | 62,500,000 | | 62,500,000 | 1/12/2015 | 1/12/2015 | 4 | 4 |
| 2/4/2015 | GREEN ENERGY  ENTERPRISES INC / QUASAR | GYOG | | | $0.0001 | 2/4/2015 | 125,000,000 | | 125,000,000 | 2/5/2015 | 2/5/2015 | 2 | 2 |
| 3/14/2016 | GREEN ENERGY  ENTERPRISES INC / QUASAR | GYOG | 3/14/2016 | $15,000 | $0.0105 | 3/18/2016 | 10,527,272 | 5 | 10,527,272 | 3/21/2016 | 4/8/2016 | 22 | 27 |
| 8/17/2015 | GREENFIELD FARMS FOOD INC | GRAS | 8/17/2015 | $6,250 | $0.0006 | 9/3/2015 | 8,330,000 | 18 | 8,330,000 | 9/4/2015 | 9/4/2015 | 2 | 20 |
| 10/15/2015 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | 10/15/2015 | $16,000 | $0.0060 | 10/15/2015 | 5,200,000 | 1 | 5,200,000 | 10/28/2015 | 10/30/2015 | 16 | 17 |
| 10/30/2015 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | | | $0.0006 | 10/30/2015 | 3,900,000 | | 3,900,000 | 11/2/2015 | 11/2/2015 | 4 | 4 |
| 11/6/2015 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | | | $0.0003 | 11/6/2015 | 10,800,000 | | 10,800,000 | 11/6/2015 | 11/6/2015 | 1 | 1 |
| 11/11/2015 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | | | $0.0001 | 11/11/2015 | 14,300,000 | | 14,300,000 | 11/11/2015 | 11/11/2015 | 1 | 1 |

**MEG Transactions and Days Held Detail**

Summary Exhibit 2.0

| | | | | | (1) | | (2) | (3) | | | | (4) | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Issuer | Ticker Symbol | Debt Purchase Date | Debt Purchase Amount | Bloomberg Closing Price | Deposit Date | Quantity Deposited | Days Held (2) - (1) | Quantity Sold | Date First Sale | Date Last Sale | Days Held (4) - (3) | Total Days Held |
| 11/16/2015 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | | | $0.0001 | 11/16/2015 | 20,000,000 | | 20,000,000 | 11/16/2015 | 11/16/2015 | 1 | 1 |
| 11/23/2015 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | | | $0.0001 | 11/23/2015 | 24,800,000 | | 24,800,000 | 12/1/2015 | 12/7/2015 | 15 | 15 |
| 12/10/2015 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | | | $0.0001 | 12/10/2015 | 38,100,000 | | 38,100,000 | 12/10/2015 | 2/9/2016 | 62 | 62 |
| 3/18/2016 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | | | $0.0001 | 3/18/2016 | 62,420,000 | | 62,420,000 | 4/5/2016 | 4/5/2016 | 19 | 19 |
| 4/7/2016 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | | | $0.0002 | 4/7/2016 | 83,600,000 | | 83,600,000 | 4/11/2016 | 4/12/2016 | 6 | 6 |
| 4/14/2016 | GRID PETROLEUM CORP / SIMLATUS CORP | GRPR | | | $0.0001 | 4/14/2016 | 61,440,000 | | 61,440,000 | 4/15/2016 | 4/27/2016 | 14 | 14 |
| 10/17/2014 | GRILLIT INC | GRLT | 10/17/2014 | $10,750 | $0.0184 | 11/20/2014 | 4,011,194 | 35 | 4,011,194 | 11/24/2014 | 12/17/2014 | 28 | 63 |
| 9/9/2015 | GRILLIT INC | GRLT | 9/9/2015 | $10,750 | $0.0004 | 9/24/2015 | 100,000,000 | 16 | 100,000,000 | 9/28/2015 | 10/19/2015 | 26 | 42 |
| 10/7/2015 | GRILLIT INC | GRLT | | | $0.0003 | 10/7/2015 | 115,000,000 | | 115,000,000 | 10/19/2015 | 10/23/2015 | 17 | 17 |
| 12/1/2015 | GRILLIT INC | GRLT | | | $0.0002 | 12/1/2015 | 112,000,000 | | 112,000,000 | 12/1/2015 | 12/8/2015 | 8 | 8 |
| 1/31/2013 | HALBERD CORPORATION | HALB | 1/31/2013 | $15,000 | $0.0196 | 4/30/2013 | 1,500,000 | 90 | 1,500,000 | 7/17/2013 | 7/25/2013 | 87 | 177 |
| 7/1/2016 | HALITRON INC | HAON | 7/1/2016 | $20,184 | $0.0037 | 7/22/2016 | 25,230,125 | 22 | 12,892,155 | 7/22/2016 | 7/29/2016 | 8 | 30 |
| 4/17/2014 | HEALTHNOSTICS INC | HNSS | 4/17/2014 | $1,000 | $0.0006 | 6/24/2014 | 100,000,000 | 69 | 94,551,357 | 8/6/2014 | 6/16/2015 | 358 | 427 |
| 7/1/2015 | HYBRID COATING TECHNOLOGIES | HCTI | 7/1/2015 | $12,000 | $0.0045 | 7/15/2015 | 5,000,000 | 15 | 5,000,000 | 7/15/2015 | 7/16/2015 | 2 | 17 |
| 7/15/2015 | HYBRID COATING TECHNOLOGIES | HCTI | 7/15/2015 | $20,000 | $0.0066 | 7/17/2015 | 21,820,306 | 3 | 21,820,306 | 7/24/2015 | 12/7/2015 | 144 | 147 |
| 3/7/2014 | IN OVATIONS HOLDING INC | INOH | 3/7/2014 | $10,000 | $0.0099 | 3/18/2014 | 17,500,000 | 12 | 17,500,000 | 4/8/2014 | 5/1/2014 | 45 | 57 |
| 4/28/2014 | IN OVATIONS HOLDING INC | INOH | 4/28/2014 | $5,000 | $0.0030 | | | | | | | | |
| 6/18/2014 | IN OVATIONS HOLDING INC | INOH | 6/18/2014 | $15,000 | $0.0047 | 7/1/2014 | 30,000,000 | 14 | 30,000,000 | 8/1/2014 | 9/18/2014 | 80 | 94 |
| 11/4/2014 | IN OVATIONS HOLDING INC | INOH | 11/4/2014 | $25,000 | $0.0005 | 12/12/2014 | 320,000,000 | 39 | 320,000,000 | 12/17/2014 | 4/10/2015 | 120 | 159 |
| 10/7/2015 | INDO GLOBAL EXCHANGE(S) | IGEX | | | $0.0012 | 10/7/2015 | 25,000,000 | | 25,000,000 | 10/19/2015 | 10/22/2015 | 16 | 16 |
| 10/29/2015 | INDO GLOBAL EXCHANGE(S) | IGEX | 10/29/2015 | $18,049 | $0.0005 | 11/6/2015 | 90,000,000 | 9 | 90,000,000 | 11/6/2015 | 12/23/2015 | 48 | 57 |
| 2/12/2014 | INOLIFE TECHNOLOGIES INC | INOL | 2/12/2014 | $20,000 | $0.0017 | 11/7/2014 | 25,000,000 | 269 | 25,000,000 | 12/23/2014 | 12/23/2014 | 47 | 316 |
| 1/27/2015 | INOLIFE TECHNOLOGIES INC | INOL | | | $0.0002 | 1/27/2015 | 29,500,000 | | 29,500,000 | 1/30/2015 | 1/30/2015 | 4 | 4 |
| 2/25/2015 | INOLIFE TECHNOLOGIES INC | INOL | | | $0.0002 | 2/25/2015 | 38,000,000 | | 38,000,000 | 3/3/2015 | 3/4/2015 | 8 | 8 |
| 3/19/2015 | INOLIFE TECHNOLOGIES INC | INOL | | | $0.0001 | 3/19/2015 | 44,000,000 | | 44,000,000 | 3/27/2015 | 4/10/2015 | 23 | 23 |
| 3/18/2014 | INTERNETARRAY INC | INAR | | | $0.0002 | 3/18/2014 | 375,000,000 | | 375,000,000 | 4/16/2014 | 4/17/2014 | 31 | 31 |
| 6/16/2014 | INTERNETARRAY INC | INAR | 6/16/2014 | $6,000 | $0.0002 | 7/15/2014 | 600,000,000 | 30 | 48,623,198 | 11/24/2014 | 12/5/2014 | 144 | 174 |
| 11/24/2014 | LAS VEGAS RAILWAYS | XTRN | 11/24/2014 | $25,000 | $0.0016 | 12/22/2014 | 16,670,909 | 29 | 16,670,909 | 12/23/2014 | 12/26/2014 | 5 | 34 |
| 12/27/2014 | LAS VEGAS RAILWAYS | XTRN | 12/26/2014 | $16,800 | $0.0012 | 12/26/2014 | 18,311,111 | 1 | 18,311,111 | 12/30/2014 | 12/30/2014 | 5 | 6 |

**MEG Transactions and Days Held Detail**

Summary Exhibit 2.0

| Date | Issuer | Ticker Symbol | Debt Purchase Date | Debt Purchase Amount | Bloomberg Closing Price | Deposit Date | Quantity Deposited | Days Held (2) - (1) | Quantity Sold | Date First Sale | Date Last Sale | Days Held (4) - (3) | Total Days Held |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | (1) | | | (2) | (3) | | | | (4) | | |
| 1/2/2015 | LAS VEGAS RAILWAYS | XTRN | | | $0.0012 | 1/2/2015 | 16,868,888 | | 16,868,888 | 1/6/2015 | 1/7/2015 | 6 | 6 |
| 1/8/2015 | LAS VEGAS RAILWAYS | XTRN | | | $0.0011 | 1/8/2015 | 16,888,888 | | 14,257,174 | 1/12/2015 | 1/15/2015 | 8 | 8 |
| 1/15/2015 | LAS VEGAS RAILWAYS | XTRN | 1/15/2015 | $25,000 | $0.0008 | 1/15/2015 | 13,142,857 | 1 | 12,878,172 | 1/26/2015 | 2/3/2015 | 20 | 21 |
| 2/5/2015 | LAS VEGAS RAILWAYS | XTRN | | | $0.0010 | 2/5/2015 | 15,333,333 | | 18,229,732 | 2/9/2015 | 2/20/2015 | 16 | 16 |
| 2/25/2015 | LAS VEGAS RAILWAYS | XTRN | | | $0.0008 | 2/25/2015 | 15,000,000 | | 15,000,000 | 3/2/2015 | 4/30/2015 | 65 | 65 |
| 5/13/2015 | LAS VEGAS RAILWAYS | XTRN | | | $0.0001 | 5/13/2015 | 40,000,000 | | 40,000,000 | 5/18/2015 | 5/26/2015 | 14 | 14 |
| 5/29/2015 | LAS VEGAS RAILWAYS | XTRN | | | $0.0002 | 5/29/2015 | 68,600,000 | | 68,600,000 | 6/2/2015 | 6/2/2015 | 5 | 5 |
| 6/4/2015 | LAS VEGAS RAILWAYS | XTRN | | | $0.0002 | 6/4/2015 | 72,000,000 | | 72,000,000 | 6/16/2015 | 6/16/2015 | 13 | 13 |
| 6/16/2015 | LAS VEGAS RAILWAYS | XTRN | | | $0.0001 | 6/16/2015 | 229,400,000 | | 229,400,000 | 6/18/2015 | 6/22/2015 | 7 | 7 |
| 10/23/2014 | LIG ASSETS INC | LIGA | 10/23/2014 | $25,000 | $0.0013 | 11/17/2014 | 35,714,285 | 26 | 35,714,285 | 11/24/2014 | 12/17/2014 | 31 | 57 |
| 12/12/2014 | LIG ASSETS INC | LIGA | 12/12/2014 | $25,000 | $0.0010 | 12/18/2014 | 262,500,000 | 7 | 262,500,000 | 12/23/2014 | 6/1/2015 | 166 | 173 |
| 1/23/2014 | MEDICAL CARE TECHNOLOGIES | MDCE | 1/23/2014 | $9,282 | $0.0018 | 3/18/2014 | 102,864,000 | 55 | 102,864,000 | 5/8/2014 | 6/27/2014 | 102 | 157 |
| 7/2/2014 | MINING GLOBAL INC | MNGG | 7/2/2014 | $14,000 | $0.0002 | 8/4/2014 | 280,000,000 | 34 | 280,000,000 | 8/15/2014 | 8/15/2014 | 12 | 46 |
| 3/18/2014 | MYCHECK INC | MYEC | | | $0.0240 | 3/18/2014 | 30,000,000 | | 30,000,000 | 4/23/2014 | 7/25/2014 | 130 | 130 |
| 7/28/2014 | MYCHECK INC | MYEC | | | $0.0184 | 7/28/2014 | 30,000,000 | | 30,000,000 | 8/11/2014 | 9/11/2014 | 46 | 46 |
| 9/14/2015 | MYCHECK INC | MYEC | 9/14/2015 | $47,176 | | | | | | | | | |
| 12/22/2015 | NEXT GALAXY CORP | NXGA | 12/22/2015 | $30,000 | $0.0027 | 12/29/2015 | 72,600,000 | 8 | 72,600,000 | 12/29/2015 | 1/19/2016 | 22 | 30 |
| 3/2/2016 | NORTH AMERICAN CANNABIS HOLDINGS INC | USMJ | 3/2/2016 | $15,000 | $0.0004 | | | | | | | | |
| 2/2/2015 | PM&E INC | PMEA | 2/2/2015 | $12,500 | $0.0001 | | | | | | | | |
| 7/31/2015 | POTNETWORK HOLDINGS INC | POTN | 7/31/2015 | $15,000 | $0.0004 | 9/9/2015 | 300,000,000 | 41 | 300,000,000 | 9/9/2015 | 9/29/2015 | 21 | 62 |
| 3/23/2016 | POTNETWORK HOLDINGS INC | POTN | 3/23/2016 | $10,000 | $0.0700 | | | | | | | | |
| 3/31/2016 | POTNETWORK HOLDINGS INC | POTN | | | $0.0250 | 3/31/2016 | 1,000,000 | | 1,000,000 | 4/5/2016 | 5/4/2016 | 35 | 35 |
| 1/22/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | 1/22/2014 | $50,000 | $0.0038 | 2/14/2014 | 50,000,000 | 24 | 46,481,973 | 3/26/2014 | 4/1/2014 | 47 | 71 |
| 2/21/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | 2/21/2014 | $36,689 | $0.0016 | | | | | | | | |
| 3/8/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | 3/8/2014 | $12,500 | $0.0000 | | | | | | | | |
| 4/9/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | | | $0.0011 | 4/9/2014 | 66,706,654 | | 66,706,654 | 4/21/2014 | 5/28/2014 | 50 | 50 |
| 6/16/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | 6/16/2014 | $36,066 | $0.0008 | 6/24/2014 | 25,014,966 | 9 | 25,014,966 | 7/3/2014 | 7/10/2014 | 17 | 26 |
| 6/25/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | 6/25/2014 | $20,000 | | | | | | | | | |
| 7/21/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | | | $0.0009 | 7/21/2014 | 100,000,000 | | 100,000,000 | 8/4/2014 | 8/11/2014 | 22 | 22 |

**MEG Transactions and Days Held Detail**

Summary Exhibit 2.0

| Date | Issuer | Ticker Symbol | (1) Debt Purchase Date | Debt Purchase Amount | Bloomberg Closing Price | (2) Deposit Date | (3) Quantity Deposited | Days Held (2) - (1) | Quantity Sold | Date First Sale | Date Last Sale | (4) Days Held (4) - (3) | Total Days Held |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/3/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | | | $0.0004 | 9/3/2014 | 400,000,000 | | 200,000,000 | 9/15/2014 | 10/1/2014 | 29 | 29 |
| 10/26/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | | | $0.0000 | 10/26/2014 | 200,000,000 | | 200,000,000 | 11/3/2014 | 11/11/2014 | 17 | 17 |
| 11/18/2014 | PPJ HEALTHCARE ENTERPRISES | PPJE | | | $0.0002 | 11/18/2014 | 200,000,000 | | 329,497,448 | 11/24/2014 | 2/19/2016 | 459 | 459 |
| 10/28/2015 | SANOMEDICS INT'L HOLDINGS INC | SIMH | 10/28/2015 | $50,000 | $0.2300 | 11/2/2015 | 1,988,177 | 6 | 1,988,177 | 11/3/2015 | 12/14/2015 | 43 | 49 |
| 11/6/2015 | SANOMEDICS INT'L HOLDINGS INC | SIMH | 11/6/2015 | $10,000 | $0.1500 | | | | | | | | |
| 12/16/2015 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0046 | 12/16/2015 | 1,100,000 | | 1,100,000 | 12/16/2015 | 12/16/2015 | 1 | 1 |
| 12/17/2015 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0030 | 12/17/2015 | 1,160,000 | | 1,160,000 | 12/17/2015 | 12/17/2015 | 1 | 1 |
| 12/18/2015 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0025 | 12/18/2015 | 1,375,000 | | 1,375,000 | 12/18/2015 | 12/18/2015 | 1 | 1 |
| 12/21/2015 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0020 | 12/21/2015 | 1,880,000 | | 1,880,000 | 12/22/2015 | 12/22/2015 | 2 | 2 |
| 12/23/2015 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0016 | 12/23/2015 | 1,880,000 | | 1,880,000 | 12/23/2015 | 12/23/2015 | 1 | 1 |
| 12/24/2015 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0010 | 12/24/2015 | 2,500,000 | | 2,500,000 | 12/24/2015 | 12/24/2015 | 1 | 1 |
| 12/28/2015 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0007 | 12/28/2015 | 2,216,639 | | 2,216,639 | 12/28/2015 | 12/28/2015 | 1 | 1 |
| 1/8/2016 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0003 | 1/8/2016 | 8,900,000 | | 8,900,000 | 1/8/2016 | 1/8/2016 | 1 | 1 |
| 1/12/2016 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0002 | 1/12/2016 | 13,900,200 | | 13,900,200 | 1/13/2016 | 1/13/2016 | 2 | 2 |
| 1/15/2016 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0001 | 1/15/2016 | 20,000,000 | | 20,000,000 | 1/15/2016 | 1/15/2016 | 1 | 1 |
| 1/20/2016 | SANOMEDICS INT'L HOLDINGS INC | SIMH | | | $0.0001 | 1/20/2016 | 24,800,000 | | 24,800,000 | 3/9/2016 | 4/7/2016 | 79 | 79 |
| 10/28/2014 | SEVEN ARTS ENTERTAINMENT INC | SAPX | 10/28/2014 | $15,000 | $0.0000 | 5/15/2015 | 300,000,000 | 200 | 300,000,000 | 5/15/2015 | 5/19/2015 | 5 | 205 |
| 11/4/2013 | URBAN AG CORP | AQUM | 11/4/2013 | $25,000 | $0.0010 | 11/15/2013 | 30,000,000 | 12 | 30,000,000 | 11/18/2013 | 11/20/2013 | 6 | 18 |
| 11/25/2013 | URBAN AG CORP | AQUM | | | $0.0005 | 11/25/2013 | 30,000,000 | | 30,000,000 | 11/26/2013 | 11/26/2013 | 2 | 2 |
| 12/20/2013 | URBAN AG CORP | AQUM | | | $0.0001 | 12/20/2013 | 90,000,000 | | 90,000,000 | 12/20/2013 | 1/3/2014 | 15 | 15 |
| 1/6/2014 | URBAN AG CORP | AQUM | | | $0.0002 | 1/6/2014 | 97,000,000 | | 97,000,000 | 1/8/2014 | 1/13/2014 | 8 | 8 |
| 1/23/2014 | URBAN AG CORP | AQUM | | | $0.0002 | 1/23/2014 | 123,790,000 | | 0 | | | | |
| Totals | | | | $1,115,013 | | | 8,537,795,146 | | 7,614,394,752 | | | | |

# SUMMARY EXHIBIT 3.1

# Aluf Holdings Inc Conversions Debt to Equity

Summary Exhibit 3.1

| Issuer | Debt Purchase Date | Debt Purchase Amount | Conversion Date | Note Amount | Deposit Amount Conversion Notice | Conversion Price | Bloomberg Close Conversion Date | Deposit Date | Quantity Deposited | Diiscount Amount % | Quantity Sold |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ALUF HOLDINGS INC | 1/7/2016 | $25,000 | 1/12/2016 | $7,250 | 14,500,000 | $0.00050 | $0.0031 | 1/13/2016 | 14,500,000 | 83.87% | 14,500,000 |
| ALUF HOLDINGS INC | | | 1/14/2016 | $8,000 | 16,000,000 | $0.00050 | $0.0014 | 1/15/2016 | 16,000,000 | 64.29% | 16,000,000 |
| ALUF HOLDINGS INC | | | 1/18/2016 | $4,875 | 13,928,571 | $0.00035 | $0.0008 | 1/19/2016 | 13,928,571 | 56.25% | 13,928,571 |
| ALUF HOLDINGS INC | | | 1/25/2016 | $4,875 | 13,928,571 | $0.00035 | $0.0012 | 1/26/2016 | 13,928,571 | 70.83% | 13,928,571 |
| TOTALS | | | | $25,000 | 58,357,142 | | | | 58,357,142 | | 58,357,142 |
| ALUF HOLDINGS INC | 1/24/2016 | $50,000 | 1/31/2016 | $5,000 | 17,857,142 | $0.00028 | $0.0005 | 2/2/2016 | 17,857,142 | 44.00% | 17,857,142 |
| ALUF HOLDINGS INC | | | 2/12/2016 | $5,400 | 45,000,000 | $0.00012 | $0.0002 | 2/12/2016 | 45,000,000 | 40.00% | 46,854,858 |
| ALUF HOLDINGS INC | | | 2/24/2016 | $2,400 | 60,000,000 | $0.00004 | $0.0002 | 3/1/2016 | 60,000,000 | 80.00% | 60,000,000 |
| ALUF HOLDINGS INC | | | 3/10/2016 | $3,600 | 90,000,000 | $0.00004 | $0.0002 | 3/21/2016 | 90,000,000 | 80.00% | 90,000,000 |
| ALUF HOLDINGS INC | | | 4/1/2016 | $3,600 | 90,000,000 | $0.00004 | $0.0001 | 4/5/2016 | 90,000,000 | 60.00% | 90,000,000 |
| ALUF HOLDINGS INC | | | 4/18/2016 | $4,000 | 100,000,000 | $0.00004 | $0.0002 | 4/21/2016 | 100,000,000 | 80.00% | 100,000,000 |
| ALUF HOLDINGS INC | | | 5/25/2016 | $8,000 | 200,000,000 | $0.00004 | $0.0001 | 6/2/2016 | 200,000,000 | 60.00% | 68,401,000 |
| TOTALS | | | | $32,000 | 602,857,142 | | | | 602,857,142 | | 473,113,000 |
| REMAINING DEBT AMOUNT | | | | $18,000 | | | | | | | |

# SUMMARY EXHIBIT 3.2

# Grid Petroleum Corp Conversions Debt to Equity

Summary Exhibit 3.2

| Issuer | Debt Purchase Date | Debt Purchase Amount | Conversion Date | Note Amount | Deposit Amount Conversion Notice | Conversion Price | Bloomberg Close Conversion Date | Deposit Date | Quantity Deposited | Diiscount Amount % | Quantity Sold |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GRID PETROLEUM CORP | 10/15/2015 | $16,000 | 10/22/2015 | $3,640 | 5,200,000 | $0.00070 | $0.0019 | 10/15/2015 | 5,200,000 | 63.16% | 5,200,000 |
| GRID PETROLEUM CORP | | $5,033 | 11/4/2015 | $2,160 | 10,800,000 | $0.00020 | $0.0004 | 11/6/2015 | 10,800,000 | 50.00% | 10,800,000 |
| GRID PETROLEUM CORP | | | 11/9/2015 | $1,430 | 14,300,000 | $0.00010 | $0.0003 | 11/11/2015 | 14,300,000 | 66.67% | 14,300,000 |
| GRID PETROLEUM CORP | | | 11/16/2015 | $1,240 | 24,800,000 | $0.00005 | $0.0001 | 11/23/2015 | 24,800,000 | 50.00% | 24,800,000 |
| GRID PETROLEUM CORP | | | 12/7/2015 | $1,905 | 38,100,000 | $0.00005 | $0.0001 | 12/10/2015 | 38,100,000 | 50.00% | 38,100,000 |
| GRID PETROLEUM CORP | | | 3/16/2016 | $3,121 | 62,420,000 | $0.00005 | $0.0001 | 3/18/2016 | 62,420,000 | 50.00% | 62,420,000 |
| GRID PETROLEUM CORP | | | 4/5/2016 | $4,180 | 83,600,000 | $0.00005 | $0.0001 | 4/7/2016 | 83,600,000 | 50.00% | 83,600,000 |
| GRID PETROLEUM CORP | | | 4/12/2016 | $3,072 | 61,400,000 | $0.00005 | $0.0002 | 4/14/2016 | 61,440,000 | 75.00% | 61,440,000 |
| **TOTALS** | | $21,033 | | $20,748 | 300,620,000 | | | | 300,660,000 | | 300,660,000 |
| REMAINING DEBT AMOUNT | | | | $285 | | | | | | | |