UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No. 17-62255-CIV-COOKE/HUNT

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

  v.

IBRAHIM ALMAGARBY, et al.,

        Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This matter is before this Court on the SEC's Motion for Remedies ("Motion"), ECF No. 120. The Honorable Marcia G. Cooke referred this case to the undersigned for all non-dispositive pretrial motions, fees, and costs. ECF No. 5; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1. The instant Motion was referred to the undersigned for a report and recommendation. ECF No. 135. Upon thorough and careful review of the record and the applicable law, the undersigned recommends that the SEC's Motion for Remedies, ECF No. 120, be GRANTED for the reasons set forth below.

    **I.**    **Background**

The United States Securities and Exchange Commission (the "SEC") brought this action against Ibrahim Almagarby ("Defendant Almagarby") and Microcap Equity Group ("Defendant MEG") (collectively "Defendants") for violations of Section 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by allegedly acting as "dealers" without registering with the SEC. ECF No.1. The SEC also asserted a claim against Defendant Almagarby for control person liability under Section 20 of the Exchange Act

based on Defendant MEG's alleged violation of Section 15(a).  *See* ECF No. 1.  The SEC moved for summary judgment and Defendants filed a cross-motion for summary judgment.  ECF Nos. 73, 74.  The Court granted the SEC's motion for summary judgment and denied Defendants' cross-motion for summary judgment.  ECF No. 112.

In the Order granting Summary Judgment, the District Court elaborated on Defendants' scheme.  The District Court noted that Defendant MEG "obtained shares by purchasing 'aged debt' from the Issuers' debtholders and entering into certain agreements granting MEG the right to convert the debt into common stock of the Issuers at a significant discount—most often 50 percent—to then-prevailing market prices. MEG specifically purchased aged debt, which allowed MEG to obtain shares that upon conversion of the debt were unrestricted—such shares were exempt from the registration requirements of the Securities Act under SEC Rule 144 when sold into the market. MEG simultaneously obtained convertible debentures or convertible notes ("convertible debentures") from the Issuers whose debt MEG had agreed to purchase, which gave MEG the right to convert the convertible debentures, or any portion of them, into discounted shares of the Issuer.  Defendant Almagarby, on behalf of Defendant MEG, subsequently converted the convertible debentures into shares of the Issuers."  ECF No. 112 at 3.  The Court also found Defendant Almagarby liable as the control person of Defendant MEG.  ECF No. 112 at 8.

The SEC moved for remedies against Defendants.  ECF No. 120.  Defendants filed a response in opposition and the SEC filed a reply.  ECF Nos. 125, 126.  The undersigned found the motion, response, reply, and the accompanying exhibits to be sufficient on the issues and therefore no hearing was held.

**II.     Remedies**

The SEC asks this Court to: 1) impose an injunction on both Defendants and enjoin them from violating the dealer registration requirements of the federal securities laws; 2) order Defendant MEG to disgorge their ill-gotten gains plus prejudgment interest in the amount of $1,067,276.99; 3) implement an $80,000 tier-one penalty against Defendant MEG; 4) impose penny stock bars against both Defendants; and 5) order Defendant MEG to surrender for cancellation its remaining shares of stock of the Issuers who entered into convertible notes with MEG during the relevant period and to surrender its remaining conversion rights under such notes. ECF No. 120. The SEC also requests that this Court find Defendant Almagarby jointly and severally liable for any disgorgement or civil penalty ordered against Defendant MEG.

A. *Injunctive Relief*

The SEC moves the Court to permanently enjoin both Defendants from violating Section 15(a) of the Securities and Exchange Act of 1934.

"The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004). "To determine whether the SEC is entitled to injunctive relief, the Court considers several factors, including (1) the egregiousness of the defendant's actions, (2) the isolated or recurrent nature of the infraction, (3) the degree of scienter involved, (4) the sincerity of the defendant's assurances against future violations, (5) the defendant's recognition of the wrongful nature of his conduct, and (6) the likelihood that the defendant's occupation will present opportunities for future violations." *SEC v. Solow*, F. Supp. 2d 1356, 1361

(S.D. Fla. 2008) (citing *SEC v. Carriba Air*, 681 F.2d 1318, 1322 (11th Cir. 1982)). "While scienter is an important factor in this analysis, it is not a prerequisite to injunctive relief." *Calvo*, 378 F.3d at 1216.

Defendants argue that the SEC has failed to provide sufficient justification to impose such a harsh penalty. Defendants argue that the SEC must show a cognizable danger of recurrent violation. Defendants also maintain that their violations were isolated and that there was no finding of intentional misconduct. For these reasons, Defendants argue that no injunction should be imposed.

The SEC responds that injunctive relief is necessary because Defendant Almagarby is young and has opened other business entities similar to Defendant MEG that can be used for similar activity. The SEC contends that Defendant MEG and the two other business entities created by Defendant Almagarby remain listed as active. The SEC argues that Defendants' conduct qualifies as egregious because it spanned over three years and thousands of transactions. The SEC further argues that, unless an injunction is imposed, nothing will prevent Defendants from returning to the violations other than their voluntary cessation.

In its Order on the Parties' cross-motions for summary judgment, the District Court stated that injunctive relief was warranted and that courts have routinely rejected Defendants' argument that injunctive relief was inappropriate because Defendants ceased their illegal activity. The undersigned agrees. Defendant Almagarby has two other busines entities like MEG that remain active and Defendants' violations spanned multiple transactions over a three-year period generating $2,601,383.09 from the sale of shares. As the District Court stated, "absent an injunction, there is little to stop

Defendants from resuming their unlawful activity." ECF No. 117 at 9.  Therefore, the undersigned recommends that Defendants should be permanently enjoined from directly or indirectly offering or selling unregistered securities in interstate commerce.

    B.  *Disgorgement*

The SEC requests that this Court order Defendant MEG to disgorge its net profits in the amount of $885,126.30, plus prejudgment interest in the amount of $182,150.69, for a total of $1,067,276.99.  Defendants argue that disgorgement is inappropriate in this action.  The SEC deducted the face amount of the aged debt, brokerage commission, fees paid to finders, fees paid for legal opinions, and fees paid to transfers agents from the gross proceeds generated from Defendant MEG's sale of each issuer's sales during the relevant period to arrive at $885,126.30.  The SEC supported its Motion with three different affidavits, one of which Defendants moved to strike.

Defendants contend that the SEC is basing disgorgement on an outdated standard.  Defendants contend that the SEC has not provided the amount of the disgorgement to be given to the wronged victims.  Next, Defendants argue that disgorgement should be denied because the SEC has not identified any victims and that there is no proximate causation between the dealer registration violation and any losses from investors.  Next, Defendants argue that the SEC's expert report is based on false information and failed to disclose information that is relevant to analysis.  Defendants argue that the SEC's expert's percentages of dilution caused by Defendants does not consider shares issued to third parties or even recent disclosures by the companies on the number of shares issued.

5

The SEC argues that disgorgement is appropriate because it is measured by net profits and not investor losses.  The SEC then argues that it did a proper calculation of net profits and that the Supreme Court's decision in *Liu v. SEC*, 140 S. Ct. 1936 (2020), did not change the analysis.  Finally, the SEC argues that Defendants' lack of causal link argument is flawed because disgorgement is not measured by investor losses. Rather, disgorgement is measured by Defendants' net profits and the causal link the SEC must establish is between the violative conduct and the Defendants' net profits.

"The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains. The burden then shifts to the defendant to demonstrate that the SEC's estimate is not a reasonable approximation. Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Calvo*, 378 F.3d at 1217.  A district court "may not disgorge profits obtained without the aid of any wrongdoing." *Solow*, 554 F. Supp. 2d at 1363 (citing *CFTC v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999)).

The undersigned agrees with the SEC that disgorgement is measured by Defendant's profits and not investor losses.  *SEC v. U.S. Pension Trust Corp.*, No. 07–22570–CIV-MARTINEZ, 2010 WL 3894082, at *23 (S.D. Fla. Sept. 10, 2010).  The undersigned disagrees with Defendants' reading of *Liu*.  The *Liu* Court affirmed the SEC's authority to seek disgorgement that does not exceed a wrongdoer's net profits.  *Liu*, 140 S. Ct. at 1940.  The *Liu* Court reiterated that disgorgement, as a remedy, is to be consistent with §78u(d)(5), which generally requires that any relief should be for the benefit of the investors.  *Id.* at 1948.  The *Liu* Court recognized that in some instances the

6

disgorgement funds are deposited with the Treasury if distribution to investors is infeasible.  *Id.*  However, the *Liu* Court left it up to the lower courts to evaluate whether depositing the funds with the Treasury in such a case would be for the benefit of the investors consistent with the requirements of §78u(d)(5).  *Id.*  Therefore, the Supreme Court made no ruling, as Defendants suggest, that the SEC must identify specific victims to whom a disgorgement award should be distributed, or that all disgorged funds must be returned to investors, or that a disgorgement award should be limited to those funds that could be returned to investors.  *See id.*

Next, the undersigned finds that the SEC can show a causal connection between the disgorgement amount and the District Court's finding that Defendant MEG violated the securities laws.  *See SEC v. Huff*, 758 Supp. 2d 1288, 1359 (S.D. Fla. 2010) (disgorgement need only be a "reasonable approximation of profits causally connected to the violation").  Defendants' violation was engaging in the business of regularly acquiring securities from issuers and reselling those securities into the market without registering as a "dealer."  Thus, the profits generated from these transactions are connected to Defendants' violation.  Therefore, the undersigned recommends that Defendant MEG be ordered to disgorge the amount of $885,126.30, plus prejudgment interest in the amount of $182,150.69, for a total of $1,067,276.99.

C. *Civil Penalty*

The SEC asks the Court to impose a tier one civil monetary penalty against Defendant MEG pursuant to Section 21(d)(3) of the Exchange Act,15 U.S.C. § 78u(d)(3). The SEC contends that a penalty is appropriate here both to punish Defendants for their misconduct and to deter others from similar conduct.

Defendants argue that the imposition of a civil penalty will negatively impact Defendant Almagarby's new career in the home restoration business.  Further, Defendants contend that Defendant Almagarby has limited assets, lives with his mother, attends college, and relies on his father for tuition, thus any payment will negatively affect him.

The amount of a civil monetary penalty the Court may order to be paid is divided into three tiers based on the nature of the violation, whether the defendant is a natural or other person, and in light of the facts and circumstances of the violation. 15 U.S.C. § 77t(d)(2)(A)-(C); 15 U.S.C. § 78u(d)(3)(A)-(C).  Here, the SEC seeks tier-one penalties for which the amount of penalty shall not exceed the greater of $5,000 for a natural person or $50,000 for any other person, or the gross amount of pecuniary gain to such defendant as a result of the violation.  15 U.S.C. § 78u(d)(3)(B)(i).

Ability to pay is, at most, a factor to be considered when imposing a penalty.  *SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008).  A district court may abuse its discretion when refusing to consider a fact that should be given significant weight, however, "nothing in the securities laws expressly prohibits a court from imposing penalties or disgorgement liability in excess of a violator's ability to pay."  *Id.*

The undersigned understands that Defendant Almagarby's financial situation may have changed.  However, this does not negate the fact that Defendants were found to have conducted thousands of transactions that violated securities law and profited from

these illegal transactions.  Thus, the undersigned recommends that a tier-one penalty in the amount of $80,000 is warranted to deter Defendants from future violative conduct.[1]

### D. *Joint and Several Liability*

The District Court in its Order on the Parties' Cross-Motions for Summary Judgment found Defendant Almagarby liable as a control person of Defendant MEG under section 20(a).  ECF No. 112 at 8–9.  Accordingly, the undersigned finds that Defendant Almagarby is jointly and severally liable for any disgorgement, prejudgment interest and civil penalty that the Court orders Defendant MEG to pay.

### E. *Penny Stock Bar*

The SEC also seeks an imposition of a penny stock bar against both Defendants. Under the Exchange Act, a court may prohibit any person who, at the time of the alleged misconduct, was participating in any offering of penny stock from participating in any future offering of penny stock. 15 U.S.C. § 77t(g); 15 U.S.C. § 78u(d)(6).  The Parties essentially repeat the same arguments for the penny stock bar that were raised in relation to the permanent injunction.

"Before a court may enter a penny stock bar, the SEC must demonstrate that the stock at issue in the violations under review is, in fact, a penny stock."  *Huff*, 758 F. Supp. 2d at 1358.  Penny stocks include any equity security with a price of less than $5.00, except as exempted under Rule 3(a)51–1 under the Exchange Act.  "When evaluating the need for a penny stock bar, the court examines the nature of the defendant's conduct and the likelihood that his occupation and experience will present further opportunities to

---

1. The amount of the civil penalty has been adjusted for inflation pursuant to 17 C.F.R. § 201.1001.

violate the securities laws." *SEC v. BIH Corp.*, No. 2:10-cv-577-FtM-29DNF, 2014 WL 7499053, at *6 (M.D. Fla. Dec. 12, 2014).

The SEC has provided support that at least some of the shares purchased by Defendants in violation of the securities laws were penny stocks. Defendants do not dispute this in their response, rather, Defendants argue that for the same reasons that an injunction is inappropriate, penny stock bars are also inappropriate. As discussed above, the undersigned finds, as the District Court noted, that absent a court-ordered bar, nothing would prohibit Defendants from returning to their violative conduct. Accordingly, the undersigned recommends that a penny stock bar also be imposed against both Defendants.

### F. *Surrender and Cancellation of Remaining Shares*

The SEC also seeks to require Defendants to surrender for cancellation their remaining shares of stock from the issuers who entered into convertible notes with Defendant MEG during the relevant time period. The SEC contends that the cancellation would not only prevent Defendants from profiting from their violative conduct but also benefit the harmed shareholders.

Defendants argue that the court should not cancel any shares or convert them because the SEC's claim was that Defendants engaged in actions as a business without registering, not that Defendants purchased notes and converted them into stocks and sold them. If the Court chooses to order the stocks to be canceled, Defendants request that the value of the shares canceled be used as an offset against any disgorgement, interest, or penalties ordered.

The undersigned finds that Defendants obtained the shares and the right to get such shares through conversion while violating the securities laws by operating as an unlawful dealer. Both requests by Defendants would essentially reward Defendants for their misconduct. Nor should any shares be allowed to offset any penalty, as if such shares had been sold, the proceeds would be subject to disgorgement. Accordingly, the undersigned recommends that Defendants should be required to surrender their remaining shares for cancellation.

### III. Conclusion

Based on the foregoing, the undersigned RECOMMENDS that the SEC's Motion for Remedies, ECF No. 120, be GRANTED. The undersigned specifically recommends the following:

- Defendants should be permanently enjoined from directly or indirectly offering or selling unregistered securities in interstate commerce.
- Defendant MEG should be ordered to disgorge the amount of $885,126.30, plus prejudgment interest in the amount of $182,150.69, for a total of $1,067,276.99.
- A tier-one civil penalty in the amount of $80,000 should be imposed against Defendant MEG.
- Defendant Almagarby should be held jointly and severally liable for the disgorgement amount and civil penalty imposed against Defendant MEG.
- A penny stock bar should be imposed against both Defendants.
- Defendants should be required to surrender their shares for cancellation.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and ORDERED** at Fort Lauderdale, Florida this 16th day of August 2021.

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Honorable Marcia G. Cooke
All Counsel of Record